*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0211p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                          *Plaintiff-Appellee,*

                                                    No. 10-5348
          *v.*

JEFFREY STOCK,
                          *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 2:09-cr-46-1—J. Ronnie Greer, District Judge.

Decided and Filed: July 11, 2012

Before: KETHLEDGE and STRANCH, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Clifton L. Corker, Johnson City, Tennessee, for Appellant. Helen C.T. Smith, UNITED STATES ATTORNEY'S OFFICE, Greenville, Tennessee, for Appellee.

        GWIN, D. J., delivered the opinion of the court, in which STRANCH, J., joined. KETHLEDGE, J. (p. 14), delivered a separate opinion concurring in part and dissenting in part.

_____

## OPINION

_____

        GWIN, District Judge. After failing to persuade the district court that the Sex Offender Registration and Notification Act violates the federal Constitution, Jeffrey Stock pleaded guilty to one count of failing to register as a sex offender. At sentencing,

_____

        [*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

the district court set Stock's Guidelines base offense level at sixteen, presuming that Stock had been required to register as a "Tier III offender." *See* United States Sentencing Guidelines Manual (U.S.S.G.) § 2A3.5(a)(1) (2009); 42 U.S.C. § 16911(4). Stock's base offense level—reduced by three levels for acceptance of responsibility and combined with Stock's criminal-history category of VI—yielded an advisory Guidelines range of 33 to 41 months' imprisonment. The district court sentenced Stock to 72 months' imprisonment with lifetime supervised release.

Stock now appeals, renewing his constitutional challenges and arguing, among other things, that the district court both incorrectly calculated his Guidelines offense level and imposed a substantively unreasonable sentence. Because we conclude that the district court selected the wrong base offense level, we vacate Stock's sentence and remand.

I.

The Sex Offender Registration and Notification Act (SORNA) requires a sex offender to "register, and keep the registration current, in each jurisdiction where the offender resides." 42 U.S.C. § 16913(a). And when a sex offender changes residence, he must—within "3 business days"—"inform" certain jurisdictions of that change. *Id.* § 16913(c). If a sex offender is required to register under these provisions, "travels in interstate . . . commerce," and "knowingly fails to . . . update a registration as required," he can be imprisoned for up to 10 years. 18 U.S.C. § 2250(a).

Appellant Jeffrey Stock is a sex offender; in 1998, he pleaded guilty to two counts of sexual battery, in violation of Indiana Code § 35-42-4-8. Before August 2008, Stock resided in Indiana. On August 21, 2008, he traveled from Indiana to Tennessee. A month and a half later, on October 2, 2008, Stock changed his residence to Tennessee.

By October 9, 2008, Stock had failed to update his sex-offender registration as required by SORNA. That same day, he was arrested in Tennessee on unrelated charges. Tennessee police held Stock in custody for eight days, during which time they learned

that he was a sex offender. Police provided Stock a sex-offender registration form, which he signed and submitted "at or around the time" he was released.

On June 19, 2009, Stock was indicted for failing to register as required by SORNA, in violation of 18 U.S.C. § 2250(a). He moved to dismiss the indictment, arguing, among other things, (1) that parts of SORNA, in particular 18 U.S.C. § 2250(a) and 42 U.S.C. § 16913, go beyond Congress's power to regulate interstate commerce; (2) that 42 U.S.C. § 16913(d)—permitting the Attorney General to apply SORNA's registration requirement retroactively—violates the nondelegation doctrine; (3) that SORNA violates the Tenth Amendment because it requires every state to accept sex-offender registrations whether or not the state has voluntarily implemented SORNA's provisions; and (4) that his prosecution violates due process because he was never notified that SORNA's registration requirement had been retroactively applied to him.

The district court denied Stock's motion. Thereafter, Stock pleaded guilty with an agreement that he be allowed "to appeal any ruling on a motion to dismiss the charges raising constitutional challenges to the statute (18 U.S.C. § 2250(a) and 42 U.S.C. §§ 16911 and 16913)."

Stock's Presentence Investigation Report (PSR) recommended a Guidelines range of 33 to 41 months' imprisonment, based in part on the Probation Officer's conclusion that Stock "was required to register as a Tier III offender." U.S.S.G. § 2A3.5(a)(1) (setting a base offense level of sixteen for a "Tier III offender['s]" failure to register); *see* 42 U.S.C. § 16911(4) (defining "Tier III sex offender"). The PSR also recommended Stock should not receive a three-level reduction for voluntary registration, *see* U.S.S.G. § 2A3.5(b)(2), because Stock had not corrected his failure to register before "the time [he] knew or reasonably should have known a jurisdiction had detected the failure," *see id.* § 2A3.5 cmt. n.2.

At sentencing, Stock failed to object to his classification as a Tier III offender but did argue that he was entitled to a three-level reduction for voluntary registration. The district court disagreed, finding that Tennessee police had detected Stock's failure to register and had required Stock to register before releasing him and concluding that, in

any event, § 2A3.5(b)(2)'s three-level reduction does not apply to an offender, like Stock, who knows that his failure to register has been detected. Accordingly, the district court adopted the PSR's calculation of the recommended Guidelines range.

At this point, the district court heard argument on the appropriate sentence. Stock—pointing to the short period of time during which he had resided in Tennessee unregistered[1]—asked for a downward variance from the 33- to 41-month Guidelines recommended range, "and if not that, then the minimum guideline sentence." The government took an extreme position: It asked the district court to sideline the Guidelines range and impose a statutory-maximum sentence of 10 years' imprisonment, arguing that any other sentence would be insufficient given "Mr. Stock's extremely violent nature." In support of this "theme," the government had offered testimony from Detective Jeffrey Hearon—the Indiana police officer who investigated Stock's 1998 sexual-battery offenses—and from Detective Derrick Woods—a Tennessee police officer who suspected Stock's involvement in the 2009 disappearance of a young woman. Hearon testified that the two victims in the Indiana case had always claimed that Stock raped them, though neither was willing to testify at any criminal trial; Woods testified that Stock was the last person seen with the missing Tennessee woman, whose car was found abandoned and burned on a road "outside of the city." The government's suggestion was, it seems, that Stock was dangerous because he had in fact raped the two Indiana victims and killed the Tennessee woman.[2]

The district court declined to "draw any conclusions about whether a rape was committed in 1998," or to "place any weight in the sentencing determination on the fact that [Stock was] the target of interest in another criminal investigation," after finding

---

[1]Stock calculates this period as three days, starting with the end of the three-day grace period after he changed his residence and ending with his detention. The government calculates this period as the roughly sixty days between Stock's arrival in Tennessee and his registration. The district court determined that the length of Stock's SORNA violation was irrelevant and made no finding on the number of days it lasted.

[2]The government denied below that it "was trying to prove that [the Indiana offense] was actually a rape instead of a sexual battery," apologizing "if that's how it appears." But that's exactly how it appears, particularly in light of the government's attempt to connect Stock to an unsolved missing-person case.

insufficient evidence in both cases. It then imposed a sentence of 72 months' imprisonment, roughly double the recommended Guidelines range. Stock filed this appeal.

## II.

We must first consider Stock's numerous challenges to SORNA: (1) that Congress improperly delegated its legislative function when it authorized the Attorney General to make SORNA's registration requirement retroactive; (2) that SORNA lies beyond Congress's power to regulate interstate commerce; (3) that SORNA impermissibly commandeers the States; and (4) that due process required the Attorney General to notify Stock of SORNA's retroactive application. We consider Stock's arguments in that order.

## A.

In January, the Supreme Court concluded that SORNA's registration requirements "do not apply to pre-Act offenders until the Attorney General specifies that they do apply." *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012). The upshot is that Stock, who became a sex offender in 1998, was not required to register in accordance with SORNA (enacted July 27, 2006) until August 1, 2008, the effective date of the Attorney General's specification that "SORNA applies to all sex offenders, including those convicted of their registration offenses . . . prior to particular jurisdictions' incorporation of the SORNA requirements into their programs." 73 Fed. Reg. 38030, 38063 (2008) ("SORNA applies to all sex offenders, including those convicted of their registration offenses . . . prior to particular jurisdictions' incorporation of the SORNA requirements into their programs."); *see United States v. Utesch*, 596 F.3d 302, 311 (6th Cir. 2010) ("SORNA became effective against offenders convicted before its enactment thirty days after the final SMART guidelines were published: that is, on August 1, 2008."); *see also* 42 U.S.C. § 16913(d).

But that doesn't help Stock here; he committed his registration offense in October 2008, just after the Attorney General made SORNA retroactive. Moreover, a

recent decision from a panel of this Court forecloses Stock's argument that 42 U.S.C. § 16913(d)—the source of the Attorney General's authority to make SORNA's registration requirements retroactive—impermissibly delegates Congress's legislative function. *See United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) ("Congress's delegations under SORNA possess a suitable intelligible principle and are well within the outer limits of the Supreme Court's nondelegation precedents." (alterations and internal quotation marks omitted)).

Accordingly, Stock was required to register in accordance with 42 U.S.C. § 16913.

## B.

Stock next challenges both SORNA's registration requirement, *see* 42 U.S.C. § 16913, and the criminal penalties attached to a sex offender's failure to register, *see* 18 U.S.C. § 2250(a), as beyond Congress's power to regulate interstate commerce. But this argument is also foreclosed by a recent decision of this Court. *See United States v. Coleman*, 675 F.3d 615, 620-21 (6th Cir. 2012) ("SORNA constitutes a valid regulation of the use of the channels of interstate commerce. . . . SORNA also constitutes a valid regulation of the instrumentalities of interstate commerce. . . . Thus, SORNA fits squarely within Congress's Commerce Clause powers . . . .").

## C.

Stock also says that SORNA violates the Tenth Amendment because it "forces [states] to register sex offenders before [those states have] an opportunity to voluntarily comply with SORNA." His theory is that requiring sex offenders to register in states where SORNA has not been implemented effectively requires states "to accept federally required sex offender registrations." We disagree.

It is true that "[t]he Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz v. United States*, 521 U.S. 898, 935 (1997). But SORNA does no such thing.

Instead, it conditions federal funds on states' voluntary compliance with a federal registration regime. As far as the Tenth Amendment is concerned, that's okay. *See South Dakota v. Dole*, 483 U.S. 203, 207-12 (1987).

The obligation SORNA does impose—the obligation to register—is imposed on sex offenders, not states. *See* 42 U.S.C. § 16913(a) ("A sex offender shall register . . . ."). That obligation exists whether or not a state chooses to implement SORNA's requirements and whether or not a state chooses to register sex offenders at all. *See* 73 Fed. Reg. 38030, 38063 (2008) ("SORNA applies to all sex offenders, including those convicted of their registration offenses . . . prior to particular jurisdictions' incorporation of the SORNA requirements into their programs."); *United States v. Trent*, 654 F.3d 574, 591 (6th Cir. 2011) ("This Court does not disagree with the proposition that the failure of a state to implement SORNA does not affect the independent obligation of a sex offender to register under the Act."). Because states can choose not to accept sex-offender registrations, SORNA does not, either directly or by necessary implication, violate the Tenth Amendment.[3]

### D.

Finally, Stock asserts that the government cannot, consistent with due process, prosecute him for violating SORNA's registration requirement because the Attorney General has not yet prescribed regulations notifying out-of-custody sex offenders of that requirement (or the criminal penalty associated therewith). *See* 42 U.S.C. § 16917(b). Although this constitutional claim survived Stock's guilty plea, the factual basis for it did not. Stock's theory depends on his lack of notice of SORNA's requirements. But Stock admitted in his plea agreement that he knew about SORNA's registration requirement. Specifically, Stock admitted that he "knowingly failed to update his

---

[3]A state's theoretical refusal to accept SORNA-required sex-offender registrations is not a federal-state double bind for sex offenders. Although SORNA requires all sex offenders—including those residing in the 36 states that have not yet fully implemented SORNA—to register, "[i]n a prosecution for a violation [of SORNA's registration requirement], it is an affirmative defense that . . . uncontrollable circumstances prevented the individual from complying." 18 U.S.C. § 2250(b); *accord United States v. Gould*, 568 F.3d 459, 466 (4th Cir. 2009) ("[A] sex offender is able to register under SORNA if he is able to register by means of an existing state registration facility . . . .").

offender registration as required by the Sex Offender Registration and Notification Act." He cannot now take the position—contrary to his plea—that he didn't know about that requirement. *See Gould*, 568 F.3d at 467 (defendant who stipulated when he pleaded guilty that he "knowingly failed to register" under state law "was fully aware of his registration duties"); *cf. Lambert v. California*, 355 U.S. 225, 228-30 (1957) ("Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted [of a strict-liability failure-to-register offense] consistently with due process.").[4]

\* \* \*

Accordingly, we affirm the district court's decision not to dismiss the indictment and affirm Stock's conviction.

## III.

We turn now to Stock's sentencing. Stock claims three errors here: (1) that the district court selected the wrong base offense level; (2) that the district court improperly denied Stock a three-level offense-level reduction for voluntarily registration; and (3) that the district court's sentence of 72 months' imprisonment plus lifetime supervised release was substantively unreasonable. We begin with Stock's first argument, which, because of Stock's failure to raise it below, we review only for plain error.

## A.

Guidelines § 2A3.5 provides three alternative base offense levels for a failure-to-register offense: "(1) 16, if the defendant was required to register as a Tier III offender;

---

[4]Mixed into Stock's due-process briefing is a final glancing blow at 18 U.S.C. § 2250(a), which Stock suggests violates the Ex Post Facto Clause. Stock's theory, it seems, is that 18 U.S.C. § 2250(a) punishes him for conduct predating its enactment. But that section does not punish Stock's 1998 sex offenses; it punishes his unregistered 2008 interstate move. And Stock does not explain why the Ex Post Facto Clause prohibits imposition of a registration requirement on already-convicted sex offenders. To the contrary, see *Smith v. Doe*, 538 U.S. 84, 92-106 (2003) (concluding that Alaska's similar sex-offender registration law "is nonpunitive, and its retroactive application does not violate the *Ex Post Facto* Clause"). Nor does Stock explain why the Ex Post Facto Clause prohibited the 109th Congress from criminalizing *future* failures to register in accordance with an otherwise nonpunitive, if retroactive, regulatory scheme. In the end, this undeveloped (and so waived) argument leaves us with more questions than answers. *See* Fed. R. App. P. 28(a)(9).

(2) 14, if the defendant was required to register as a Tier II offender; or (3) 12, if the defendant was required to register as a Tier I offender."   U.S.S.G.  §  2A3.5(a). "'Tier I offender', 'Tier II offender', and 'Tier III offender' have the meaning given those terms in 42 U.S.C. § 16911(2), (3), and (4), respectively."  *Id.* § 2A3.5 cmt. n.1. The district court—consistent with the PSR's conclusion that Stock "was required to register as a Tier III offender"—set Stock's base offense level at 16.  This was error.

"The term 'tier III sex offender' means a sex offender whose offense is . . . comparable to or more severe than," among other offenses not relevant here, "aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)."  42 U.S.C. § 16911(4).  Both aggravated sexual abuse (as described in 18 U.S.C. § 2241) and sexual abuse (as described in 18 U.S.C. § 2242), require a "sexual act," which, among other things not relevant here, means:

> (A)    contact between the penis and the vulva or the penis and the anus . . . ;
>
> (B)    contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; [or]
>
> (C)    the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person . . . .

18 U.S.C. § 2246(2).

Stock's 1998 Indiana sexual-battery offenses were not—at least as far as we can tell from the record—"comparable or more severe than" the two federal sexual-abuse offenses listed in 42 U.S.C. § 16911(4).  *First*, the Indiana sexual-battery statute Stock violated does not require a "sexual act" as defined in 18 U.S.C. § 2246(2).  Instead, it punishes

> A person who, with the intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is:
>
> > (1)    compelled to submit to the touching by force or the imminent threat of force; or

>    (2)    so mentally disabled or deficient that consent to the
>           touching cannot be given . . . .

Ind. Code § 35-42-4-8(a).  In other words, the Indiana statute prohibits all forced, sexually motivated touching, whether of the genitalia or not, and whether through the clothing or not.  Accordingly, the mere fact that Stock was convicted of two violations of that statute tells us nothing about whether those offenses were "comparable to," 42 U.S.C. § 16911(4), federal offenses requiring "sexual acts," 18 U.S.C. § 2246(2), or were perhaps even more severe.  It certainly does not establish that Stock was "required to register as a Tier III offender," rather than as a Tier II (or the default, Tier I), offender.  U.S.S.G. § 2A3.5(a)(1).

*Second*, the district court found no other fact that would support its conclusion that Stock "was required to register as a Tier III offender."  *Id.*  Although the government had offered evidence that Stock's 1998 sexual-abuse offenses were, in fact, rapes, the district court concluded that too little evidence supported such a finding.  All the district court could say for sure was that Stock "stood before a judge in 1998 and [Stock] told [the judge] that [he was] guilty of sexual battery."[5]

On this record, there is nothing to establish that Stock's Indiana offenses were "comparable to or more severe than" the federal offenses listed in 42 U.S.C. § 16911(4).  Accordingly, there is nothing to support the district court's conclusion that Stock "was required to register as a Tier III offender," and the district court erred when it set Stock's base offense level at 16.  U.S.S.G. § 2A3.5(a)(1).

---

[5]We decline to decide whether it would have been appropriate for the district court to inquire into the specific factual circumstances of Stock's 1998 Indiana violations, rather than to limit itself to the fact of Stock's convictions.  Guideline § 2A3.5(a) isn't all that clear on this point.  And the parties have not briefed this issue, although both the government, *see* Appellee's Br. at 15, and Stock, *see* Appellant's Br. at 21-23, support their arguments regarding Stock's proper Tier with facts other than the fact of Stock's convictions.

We also observe that the Seventh Circuit has authorized the use of the "modified categorical approach" in exactly this situation, *see United States v. Taylor*, 644 F.3d 573, 576-77 (7th Cir. 2011), though we question whether such a rigid approach is required where the Guidelines determination does not appear to have constitutional dimensions.  Unlike, for example, the armed-career-criminal guideline—which requires a district court to determine the applicability of an enhanced statutory sentence, *see* U.S.S.G. § 4B1.4(a), and thus may in some cases subsume the limitations of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *see Shepard v. United States*, 544 U.S. 13, 24-26 (2005)—the failure-to-register guideline does not to our knowledge require a district judge to find any fact that increases the available penalty for a SORNA violation.

Moreover, we think this error plain. Admittedly, there was (and remains) some doubt about the extent to which Guidelines § 2A3.5(a) directs district courts to look beyond the mere fact of a prior sex-offense conviction and into the specific factual circumstances of that offense. *See supra* note 5. But there is no doubt that in this case nothing—neither the fact of Stock's prior convictions nor any other factual finding—supported the district court's conclusion that Stock was required to register as a Tier III offender. And, as a result of that incorrect conclusion, Stock "ended up with an adjusted offense level of [13] instead of [11] . . . , and was therefore subjected to a higher sentencing range." *United States v. Gardiner*, 463 F.3d 445, 461 (6th Cir. 2006) (finding plain error where the district court "erroneously applied [a] two point enhancement" and, "[a]s a consequence, [the defendant] ended up with an adjusted offense level of 21 instead of 19").

Accordingly, we vacate Stock's sentence.

### B.

Because we conclude that the district court selected the wrong base offense level, we will address Stock's other claims only briefly.

*First*, we think the district court properly rejected Stock's request for a three-level offense-level reduction for "voluntarily . . . correct[ing] the failure to register." U.S.S.G. § 2A3.5(b)(2)(A). "In order for [this reduction] to apply, the defendant's voluntary attempt . . . to correct the failure to register must have occurred prior to the time the defendant knew or reasonably should have known a jurisdiction had detected the failure to register." *Id.* § 2A3.5 cmt. n.2.

The district court found that before Stock admitted his sex-offender status to Tennessee police, those officers had already learned from a records check that Stock was a sex offender "required to register under Tennessee law" and, "therefore, required [Stock] to complete the [sex-offender] registration before he could be released." That finding, which is supported by the testimony of two witnesses, is not clearly erroneous. Nor did the district court clearly err when it found that Stock's contrary

recollection—that he was released from custody before his failure to register was discovered but then "prepared and neatly typed [the registration] document and signed it[ and] returned it to the Knox County Sheriff's Office" thirty or so minutes later—was "simply incredible." Those findings undermine Stock's claimed entitlement to a three-level reduction for voluntary registration.

*Second*, although the district court will need to conduct a new sentencing hearing, we observe that Stock's 72-month sentence is an outlier when compared to other sentences for failure-to-register violations, even when that comparison is limited to other criminal-history-category-VI offenders. In fact, it was by far the *longest* sentence imposed during all of 2008, 2009, and 2010—possibly ever—on a criminal-history-category-VI offender for a failure-to-register offense.[6] The two next-longest sentences during that period were a 60-month combined sentence (48 months of incarceration plus 12 months of alternative confinement) and a 53-month sentence to incarceration. And Stock's sentence was about double both the average sentence (37 months' imprisonment) and the median sentence (36 months' imprisonment) imposed during that period on criminal-history-category-VI offenders for failing to register. If that's startling, it shouldn't be surprising; after all, Stock's sentence was nearly twice the top of the

---

[6]Helpfully, the United States Sentencing Commission provided this offense- and criminal-history-category-specific data in response to a specific request from the Court. Included in this sample were all sentences imposed on criminal-history-category-VI offenders for offenses covered by Guidelines § 2A3.5 ("Failure to Register as a Sex Offender") during fiscal years 2008, 2009, and 2010.

For whatever reason, the Commission does not publish offense- and criminal-history-category-specific sentencing data as a matter of course. The closest it comes is in a table attached to its yearly *Sourcebook of Federal Sentencing Statistics*, the 2010 version of which is available at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2010/SBTOC10.htm. Table 14 of that publication, entitled *Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category*, and the 2010 version of which is available at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2010/Table14.pdf, lists the nationwide mean and median sentences for offenders by "primary offense" and criminal-history category.

Table 14, then, is a starting point for district judges in their efforts "to avoid unwarranted sentence disparities among defendants with similar criminal records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). But it has its limitations. The thirty-two "primary offense" categories it lists are so general that it often is difficult to know whether offenders grouped into the same "primary offense" category have indeed "been found guilty of similar conduct." *Id.* For example, the SORNA violation for which Stock was convicted falls within the primary-offense category "Other Miscellaneous Offenses," which includes everything from "aircraft piracy" to the "illegal use of [a] regulatory number." Appendix A of the *2010 Sourcebook of Federal Sentencing Statistics*, available at http://www.ussc.gov/Data_and_Statistics/Annual_Reports_and_Sourcebooks/2010/Table14.pdf. In light of the fact that the Sentencing Commission has the ability to generate true offense- and criminal-history-category-specific sentencing data, as it did for the Court in this case, the Court wonders why the Commission does not simply publish this data for the benefit of district judges.

(erroneously-high) Guidelines range of 33 to 41 months' imprisonment calculated by the district court.

District judges are not bound, of course, by the sentencing Guidelines and courts of appeals ultimately review both within- and without-Guidelines sentences for overall reasonableness. *Gall v. United States*, 552 U.S. 38, 51 (2007). But more substantial variances generally require more substantial justifications, and accordingly, a "major" variance like the one in this case "should be supported by a more significant justification than a minor one." *Id.* at 50.

Because of the procedural error with the finding that Stock was a Tier III offender, we do not need to speak to whether Stock's sentence is substantively unreasonable. We see, as did the district court, that Stock has a large number of prior offenses, though most "are not among the most serious offenses." We understand, too, the district court's frustration that Stock has, until now, received "one suspended sentence after another," which "didn't serve [Stock's] interest and [] certainly didn't serve the public's interest." We reserve the question whether, on balance, those factors warrant six years of incarceration for a three- to sixty-day delay in failing to register after moving to a new location. *See United States v. Aleo*, 681 F.3d 290, 299-302 (6th Cir. 2012) (concluding that a sentence more than double the Guidelines-range maximum was substantively unreasonable when the district court failed to identify compelling justifications for the Guidelines variance or to account for the disparity from other sentences for similar offenses).

## IV.

For these reasons, we affirm Stock's conviction, vacate his sentence, and remand for resentencing.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

KETHLEDGE, Circuit Judge, concurring in part and dissenting in part. Stock never argued to the district court that his Indiana conviction for sexual battery should be treated as a Tier II offense rather than a Tier III one. Thus, to the extent we choose to review the issue at all, we review it only for plain error. Here, there were conflicting signals both factually and legally: One other circuit has held that a similar conviction for sexual battery is properly treated as a Tier III offense, *see United States v. Bango*, 386 F. App'x 50 (3d Cir. 2010); and the alleged conduct giving rise to the Indiana conviction was outright rape. I therefore do not think that any error here was plain.

I also think that Stock's sentence fell within the latitude afforded the sentencing judge. Stock has been engaged in crime almost continuously throughout his adult life, with surprisingly little consequence in terms of incarceration. The district court properly emphasized these points and others in its analysis under 18 U.S.C. § 3553(a). I would affirm the court's judgment.

Subject only to these two points of departure, I join my colleagues' thoughtful opinion in this case.