**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 18a0585n.06

CASE No. 18-3078

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | **FILED**<br>Nov 26, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) ) |  |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| MARLON CLEMONS, | ) ) |  |
| Defendant-Appellant. | ) ) |  |

BEFORE: THAPAR, BUSH, and NALBANDIAN, Circuit Judges.

NALBANDIAN, Circuit Judge. Marlon Clemons appeals his above-Guidelines sentence of 80 months' imprisonment for being a felon in possession of a firearm and ammunition. For the following reasons, we affirm.

**I.**

Marlon Clemons was wanted for murder and felonious assault when Ohio officers detained him in his car on January 23, 2017. After Clemons admitted to having a firearm under his driver's seat, the officers found a .45 caliber pistol there along with ammunition. Clemons eventually pleaded guilty to a one-count indictment charging him with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Clemons had previous

felony convictions for improperly discharging a firearm, robbery, and twice committing felonious assault.

Clemons' PSR calculated his total offense level under the Guidelines as seventeen after reducing three points from his base offense level because he accepted responsibility for his crime. It also calculated his criminal history score as ten, which placed him in Criminal History Category V. Together, Clemons' total offense level and criminal history category yielded a Guidelines sentencing range of forty-six to fifty-seven months' imprisonment. But Clemons did not ultimately receive a sentence within this range. Instead, the district court varied Clemons' sentence upwards to eighty months after conducting a nearly two-hour sentencing hearing where it heard from him, his lawyer, his mother, the Government, and a witness for the Government.

Clemons now appeals this sentence.

## II.

Clemons challenges both the procedural and substantive reasonableness of his sentence. A sentencing court procedurally errs by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). And it substantively errs if it "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conaster*, 514 F.3d 508, 520 (6th Cir. 2008) (citing *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005)). We review claims of procedural and substantive unreasonableness for an abuse of discretion, *United States v. Adams*, 873 F.3d 512, 516 (6th Cr. 2017) (citing *United States v. Carson*, 560 F.3d 566, 585 (6th Cir. 2009)), but we review the district court's factual findings

for clear error and its legal conclusions de novo. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018).

## III.

*Procedural Reasonableness*. Clemons first argues that the district court erred by relying on his alleged conduct in cases where he was charged with a crime but was ultimately acquitted or the charges were dismissed or "no billed."[1] Clemons claims that although he objected to the inclusion of those arrests in his PSR, the court summarily adopted the PSR's factual findings regarding those cases to justify his above-Guidelines sentence. Although neither party identifies it as such, Clemons appears to be making an argument based on Federal Rule of Criminal Procedure 32(i)(3)(B), which provides that a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary." We review a district court's compliance with this rule de novo. *United States v. White*, 492 F.3d 380, 414 (6th Cir. 2007).

Clemons mischaracterizes the nature of the district court's reliance on his arrest record. The court did not simply assume his guilt in cases where he was arrested but not convicted. Nor did it summarily adopt the PSR's factual findings in those cases. Rather, the court expressed its concern about what "seem[ed] to be a pattern" of charges against Clemons being dropped or no billed "because a witness wasn't available." (*See* R. 49, Sentencing Hr'g Tr. at PageID #359; Doc. 4, PSR at 7–8 ¶¶ 33–34, 36-38.) At best, this statement suggests that the court agreed with the Government's argument that Clemons had engaged in a pattern of intimidating or otherwise discouraging witnesses from cooperating in cases against him.

---

[1]   A "no bill" refers to a grand jury's notation on an indictment indicating that there is insufficient evidence to prosecute an individual. *See* No Bill, Black's Law Dictionary (10th ed. 2014).

Granted, the court also said that there were at least eighteen "victims that were somehow implicated" in Clemons' possession of a firearm, which seemingly included the alleged victims in cases where Clemons was not ultimately convicted. But read in context, the court's statement was addressing Clemons' specific claim that he was, in the words of the court, "the target of a police conspiracy, a neighborhood conspiracy." (*Id.* at PageID #366.) Earlier in the hearing, Clemons claimed that the police never investigated numerous incidents where people shot at him, causing him to fear for his life and carry a gun. He also asserted that the reason so many cases against him were dropped or resulted in his acquittal was because he was being "targeted, not only by the community, but also by the law enforcement." Specifically, he claimed that "on numerous occasions," people would accuse him of a crime and the police would simply bring charges against him without doing any investigation.

But the court cautioned Clemons that he would "not succeed" in claiming he was the target of a conspiracy. It noted that although he was prohibited from possessing a firearm ever since he was fifteen,[2] he persisted in doing so "time and time again." And the court was correct—Clemons never disputed the parts of his PSR indicating that he was convicted several times for committing crimes where he or his accomplice used a gun. When Clemons was fifteen, for example, he shot a man three times and the man's friend once after they walked away from him when he demanded the man's money. When he was twenty-eight, Clemons slammed a woman onto a vehicle while his accomplice held the woman at gunpoint and then took her purse. And when he was twenty-nine, Clemons shot a sixteen-year-old boy in the leg during a fight.

Importantly, the court recognized that Clemons' arrest record contained "some dismissals . . . a few acquittals . . . a few no bills," acknowledging that Clemons was not necessarily guilty of

---

[2] Clemens was thirty-nine years old on the date of his sentencing. (*See* Doc. 4, PSR at 2.)

everything described in his PSR. (*Id.* at PageID #367.) But considering Clemons' undisputed criminal record, the court's statement about eighteen "victims" suggested that it did not find the opposite to be true—that Clemons was, as he proclaimed, "actually, honestly, innocent" of those other crimes listed on his PSR where he was arrested but not ultimately convicted. (*Id.* at PageID #366.) Nevertheless, the court's broader point was that it did not "believe that there [was] a wholesale conspiracy against [Clemons]" in which police charged him without any basis whenever he was accused of a crime. And it was a fair point.

Alternatively, Clemons argues that it would have still been error for the court to find that he engaged in a pattern of witness intimidation, even if it did not credit the disputed allegations in his arrest record. But it is unclear that the court made, much less relied on, such a finding. The court perhaps came closest to doing so when it said it was "concerned that there does seem to be a pattern" of cases against Clemons that were either no billed or dismissed because a witness was not available. (*Id.* at PageID #375.)

Even if we assume the court made such a finding, however, we cannot conclude that it was "clearly erroneous" in doing so. "A finding of fact will only be clearly erroneous when, although there may be some evidence to support the finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir. 1997) (quoting *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985)). While Clemons claimed to be innocent of the charges brought against him in cases where he was not convicted, he did not dispute that five of those cases were dismissed or no billed after a witness failed to appear.

Clemons also did not dispute the testimony of the Government's sentencing hearing witness—an Ohio police officer—who had twice been involved in arresting him, including for the

instant offense. The first arrest occurred in 2014, and as part of his testimony regarding that arrest, the officer testified about what he had learned about Clemons' criminal history leading up to it. For example, the officer testified that, in 2010, Cleveland police officers found a shotgun, an assault rifle magazine, and ammunition when they executed a search warrant on a Cleveland residence where Clemons was believed to be staying. Although Clemons was not found in the residence, police tracked him down to a hotel in Detroit, Michigan, where he was arrested after attempting to escape. Among other incidents, the officer also described Clemons' attempt to evade an arrest in 2012, and how two of Clemons' associates offered money to a witness so she would not testify in a trial related to his 2014 arrest.

The trial court has broad discretion to "take into consideration uncharged conduct or even conduct for which the defendant has been acquitted so long as that conduct has been proven by a preponderance of the evidence." *United States v. Chance*, 306 F.3d 356, 396 (6th Cir. 2002). Given the evidence, we are not "left with the definite and firm conviction" that the district court would have been mistaken to find that Clemons engaged in a pattern of witness intimidation. Assuming the court made such a finding, it did not clearly err.

Clemons next argues that the district court erred by improperly relying on an inaccurate national sentencing average to increase his sentence. We note at the outset that Clemons and the Government dispute our standard of review. The Government argues that Clemons failed to preserve this issue for appeal, and so our review should be for plain error. But Clemons argues that his counsel objected to the court's upward variance at the end of his sentencing hearing, and because the court's variance was based in part on this national average, our review should be for harmless error.

The Government has the better argument. Near the end of Clemons' sentencing hearing, the district court followed the rule laid down in *United States v. Bostic* requiring it to "ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised." 371 F.3d 865, 872 (6th Cir. 2004.) Counsel stated only that he "object[ed] to the upward variance, [and] . . . that this case would have been appropriate to a guideline sentence of between 46 and 57 months." (*See* R. 49, Sentencing Hr'g Tr. at PageID #390.)

Counsel's general objection to the court's upward variance was insufficiently specific to alert the district court to what Clemons now claims was the true basis for his objection—the court's reliance on a national sentencing average. A party fails to preserve a claim on appeal if it answers the *Bostic* question in the affirmative "but at such a high degree of generality that the district court has no opportunity to correct its purported error and the court of appeals has been deprived of a more detailed record to review." *United States v. Simmons*, 587 F.3d 348, 358 (6th Cir. 2009). In *Simmons*, for example, defense counsel responded to the district court's *Bostic* question by stating, "Your Honor, I object just for the record for the procedural, substantive aspects." *Id.* at 355. We held this objection was too vague to preserve his claim that "the district court failed to address [his] argument for a downward variance based on the disparate treatment of crack and powder cocaine." *Id.* Here, defense counsel's objection was even more vague as it simply objected to the district court's variance without indicating whether his objection was procedurally based, substantively based, or both.

Accordingly, our review is for plain error, which means Clemons must "show (1) error (2) that 'was obvious or clear,' (3) that 'affected [his] substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459

(6th Cir. 2006)). We will only find such error "where the error is so plain that the trial judge was derelict in countenancing it." *Vonner*, 516 F.3d at 386 (internal quotations and alterations omitted).

Here, the trial court did not commit error, let alone plain error. The court first mentioned the national sentencing average at Clemons' sentencing hearing after Clemons' counsel asserted that a person charged with the same conduct in *state* court would receive a shorter sentence. Counsel's argument was based on 18 U.S.C. § 3553(a)(6), which requires courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Counsel admitted that this was "a little bit of an apples and oranges comparison." Nevertheless, he persisted in arguing that Clemons was "similarly situated" to such state court defendants. The court rejected that comparison, noting that penalties in federal court are greater because defendants are often prosecuted there after they have been repeatedly prosecuted in state court. And the court was right to do so because it would have been error for the court to have looked to state court defendants in measuring disparities under 18 U.S.C. § 3553(a)(6). *See United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007). The court went on to explain,

> [W]hen I consider what might lead to disparity, I look at other federal defendants. And in Mr. Clemons' case . . . 80 months is the average for a federal defendant convicted of a firearms offense in Category V. And that's what I would prefer to look at when I consider whether or not there is going to be some sentencing disparity, not state court. My colleagues in state court do their heavy lifting. We do our own here.

(*See* R. 49, Sentencing Hr'g Tr. at PageID #362.)

Clemons argues that this "explanation alone demonstrates that the court erred," because it shows that the court considered a national average and not simply Clemons' guidelines range. Clemons primarily relies on *United States v. Willingham*, 497 F.3d 541 (5th Cir. 2007), where the

Fifth Circuit held it was plain error for a district court to rely on a national sentencing average in varying a defendant's sentence downward. *Id.* at 545.

But not only have we repeatedly held that 18 U.S.C. § 3553(a)(6) refers to *national* sentencing disparities, *see e.g.*, *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008); *United States v. Simmons*, 501 F.3d 620, 623–24 (6th Cir. 2007), we have repeatedly taken national sentencing averages into account in reviewing sentences for reasonableness, *see e.g. United States v. Elmore*, 743 F.3d 1068, 1075 (6th Cir. 2014); *United States v. Stock*, 685 F.3d 621, 630 (6th Cir. 2012); *United States v. Brinda*, 321 F. App'x 464, 468 n.4 (6th Cir. 2009). Moreover, in *Willingham*, the district court's sentence was based solely on the national average and not on any other § 3553(a) factor. *See Willingham*, 497 F.3d at 546. Thus, the court held, the "plain error affected the Government's substantial right to have a proper and lawful sentence imposed on the defendant." *Id.* Here, in contrast, Clemons' sentence was based on several other § 3553(a) factors, as we discuss below in reviewing his sentence for substantive reasonableness. Clemons has therefore not met his burden to show that the district court's reliance on a national average affected his substantial rights.

Alternatively, Clemons contends that even if it was proper for the court to rely on a national sentencing average, the court erred because the average the court relied on was "inflated." Specifically, Clemons argues that because he was convicted of being a felon in possession of a firearm and ammunition, the court should have compared his sentence to defendants in Criminal History Category V who were sentenced under his primary sentencing guideline: U.S.S.G § 2K2.1. The average sentence for those defendants is sixty-six months.[3] Instead, the court compared his

---

[3] U.S. Sentencing Comm'n, Interactive Sourcebook of Federal Sentencing Statistics, 2016 Sentence Length for Offenders in Each Criminal History Category by Primary Sentencing Guideline, https://isb.ussc.gov/USSC?toc-section=0 (last visited Nov. 5, 2018).

sentence to defendants in Criminal History Category V who were sentenced for firearms offenses generally. The average for those defendants is eighty months.[4] Said another way, Clemons argues that the court erred by relying on an average based on a broad "primary offense category," instead of the specific offense he was convicted of.

But our court has explicitly approved district courts to use the exact statistical table the district court used in Clemons' case—Table 14 in the Sentencing Commission's annual Sourcebook of Federal Sentencing Statistics—which contains sentencing data based on primary offense categories. *Stock*, 685 F.3d at 629 n.6. Indeed, in *Stock*, we said this table "is a starting point for district judges in their efforts 'to avoid unwarranted sentence disparities among defendants with similar criminal records who have been found guilty of similar conduct.'" *Id.* (quoting 18 U.S.C. § 3553(a)(6)).

To be sure, we acknowledged that the data "has its limitations" because "it often is difficult to know whether offenders grouped into the same primary offense category have indeed been found guilty of similar conduct." *Id.* And the *Stock* court ultimately relied on offense-specific statistics in evaluating the reasonableness of the sentence at issue. *Id.* But there the defendant's offense—failure to register as a sex offender—fell within the "other miscellaneous offenses" category. *Id.* That category was, as it is now, extremely broad and "include[d] everything from 'aircraft piracy' to the 'illegal use of [a] regulatory number.'" *Id.* (second alteration in original). [5]

---

[4]     U.S. Sentencing Comm'n, Interactive Sourcebook of Federal Sentencing Statistics, 2016 Sentence Length for Offenders in Each Criminal History Category by Primary Offense Category (Table 14), https://isb.ussc.gov/USSC?toc-section=0 (last visited Nov. 5, 2018).

[5]     To illustrate just how broad the "other miscellaneous offenses" category was, we reproduce it in its entirety below:

> Other Miscellaneous Offenses includes illegal use of regulatory number – drugs; illegal transfer of drugs; illegal regulatory number to get drugs; drug paraphernalia; forgery/fraud for drugs; dangerous devices to protect drugs; manufacture drugs against quota; endangering life while manufacturing drugs; operate carrier under

In contrast, Clemons' offense—being a felon in possession of a firearm and ammunition—fit comfortably within the firearms category it fell into.[6] In any event, it was not error, much less plain error, for the district court to have relied on a statistical table we have called a "starting point" in measuring disparities under § 3553(a)(6). To the extent Clemons argues that the district court relied too heavily on the average, we consider that argument below in our review of his sentence for substantive reasonableness.

Additionally, Clemons' argument is mistaken in its premise—the court did not accept the PSR's calculation placing him in Criminal History Category V. After explaining its reasons for varying his sentence upwards, the court increased his Criminal History Category from V to VI and his total offense level from seventeen to twenty. The court appears to have done so in response to

---

drugs; endangerment from hazardous/toxic substances; mishandling substances, records, etc.; threat of tampering with public water system; hazardous devices of federal lands; mishandling other pollutants, records, etc.; improper storage of explosives; recordkeeping violation – explosives; possession of other weapon – on aircraft, in federal facility; failure to report theft of explosives; feloniously mailing injurious articles; transport of hazardous material in commerce; interference with flight crew, other offense – aboard aircraft; criminal infringement of copyright/trademark; conflict of interest; unauthorized payment; non-drug forfeiture; impersonation; false statement to Employee Act; reporting offenses – labor related; criminal infringement of trademark; unlawful conduct relating to control/cigarettes; trespass; destruction of property; destruction of mail; aircraft piracy; conspiracy to murder (no death, assault, or attempt); conspiracy to commit murder; and all other miscellaneous offenses not previously listed in any of the other categories.

U.S. Sentencing Comm'n, Appendix A to 2010 Sourcebook of Federal Sentencing Statistics, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2010/Appendix_A_0.pdf#page=11 (last visited Nov. 5, 2018).

[6] In 2016, the firearms category "included possession/transportation of firearms or ammunition; possession of guns/explosives on aircraft; unlawful trafficking, etc., in explosives; possession of guns/explosives in federal facility/schools; use of fire or explosives to commit felony; and use of firearms or ammunition during crime." U.S. Sentencing Comm'n, Appendix A to 2016 Sourcebook of Federal Sentencing Statistics, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2016/AppendixA.pdf.

the Government's requests to depart upwards by increasing Clemons' criminal history category and offense level by those amounts. The Government argued that both adjustments were warranted because Clemons' criminal history score underrepresented the seriousness of his criminal history and continued danger to the public.[7]

The court ultimately chose to vary rather than depart, but it was entitled to do so for the same reasons it could have departed. Section 3553(a) requires sentencing courts to consider, among other things, a defendant's criminal history and the need to protect the public in deciding whether to vary his sentence. *See* 18. U.S.C §§ 3553(a)(1); (a)(2)(c). And our court has repeatedly affirmed both grounds as reasons to vary a defendant's sentence upwards. *See e.g.¸ United States v. Lanning*, 633 F.3d 469, 475 (6th Cir. 2011) (noting that "criminal history and likelihood of reoffending . . . may properly be taken into account in the court's decision to impose an upward variance under 18 U.S.C. § 3553(a)"); *United States v. Musick*, 601 F. App'x 414 (6th Cir. 2015) (upholding upward variance because defendant's criminal history score underrepresented his criminal history and likelihood to reoffend).

In *United States v. Musick*, for example, we upheld a district court's decision to vary a defendant's sentence upwards after it found that the defendant's Criminal History Category of IV "substantially underrepresent[ed] the seriousness of [his] criminal history and, more importantly, the likelihood that he [would] commit other crimes." *Id.* at 416–17. "As a result, the district court varied upward using Criminal History Category V as a guide for that variance." *Id.* at 417. We held that the district court properly exercised its discretion to vary upwards because the defendant's

---

[7]     Sentencing Guideline § 4A1.3(a)(4)(B) provides that, where a defendant in Criminal History Category VI warrants an upward departure, the court "should structure the departure by moving incrementally down the sentencing table to the next higher offense level in Criminal History Category VI until it finds a guideline range appropriate to the case."

criminal history score did not account for similar crimes he had committed in the past and because of his likelihood to recidivate. *See id.* at 419.

Here, the district court's upward variance was motivated by the same concerns. Speaking to Clemons, the court said he should not be surprised that the Government was asking it to sentence him to the statutory maximum of ten years in prison. "You've earned that consideration," said the court. "You've done it, because time and time again, you victimized society at the point of a gun." And indeed, Clemons' PSR assigned no criminal history points to him for two of his three convictions involving the use of a gun. The court then recounted some of Clemons' many convictions in state court over the years, figuring that each time the state court was "hoping against hope that [it would] be the last time" Clemons broke the law.

But, said the district court, Clemons had "proven them wrong" and was "as inclined to justify [his] rule-breaking and lawbreaking" on the day of his sentencing as he had ever been. After the court considered Clemons' criminal history alongside the other § 3553(a) factors, including the "need to protect the public," the court proceeded to vary Clemons sentence upwards to eighty months.

And given that the court varied Clemons' Criminal History Category upwards to VI and his total offense level upwards to twenty, his new Guidelines sentencing range was seventy to eighty-seven months. Importantly, according to Clemons' preferred statistical table, the average sentence for a Category VI non-career offender sentenced under U.S.S.G § 2K2.1 is eighty-six months.[8] Thus, even if we were to assume it was error for the district court to consult the national

---

[8]    U.S. Sentencing Comm'n, Interactive Sourcebook of Federal Sentencing Statistics, 2016 Sentence Length for Offenders in Each Criminal History Category by Primary Sentencing Guideline, https://isb.ussc.gov/USSC?toc-section=0 (last visited Nov. 5, 2018).

sentencing average for Category V defendants convicted of firearms offenses, Clemons cannot show he was prejudiced by the supposed error.

Clemons also cannot show he was prejudiced by the supposed error because the court said it would have imposed the same sentence by departing upwards under "Section 4A" of the Guidelines. Presumably, the court was referring to U.S.S.G. § 4A1.2 and § 4A1.3—the Guidelines provisions that the Government had argued justified enhancing Clemons' Criminal History Category to VI and his total offense level to twenty. On appeal, Clemons argues that the district court's explanation did not suffice as an alternative basis for his sentence because "[t]here [was] no indication that the court had in mind a rationale wholly different from the [variance] factors that it expressly relied on."

Again, Clemons' argument is based on a mistaken premise—there was no need for the district court's departure analysis to be "wholly different" from its variance analysis. At bottom, § 4A1.2 and § 4A1.3 permit a district court to depart upwards when a defendant's criminal history score seriously underrepresents his true criminal history and likelihood of recidivism. *See* U.S.S.G. § 4A1.2, application n.3(b) (permitting an upwards departure when "a criminal history score [] underrepresents the seriousness of the defendant's criminal history and the danger that the defendant presents to the public"); U.S.S.G. § 4A1.3(a)(1) (permitting an upwards departure when "the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes").

As we have already discussed, the same considerations drove the court's analysis to vary Clemons' sentence upwards. And this accords with our decisions acknowledging that variances

and departures often entail overlapping analyses.[9] *See e.g.*, *United States v. Grams*, 566 F.3d 683, 687 (6th Cir. 2009) (explaining that "the same facts and analyses can, at times, be used to justify both a Guidelines departure and a variance" but noting that the "concepts are distinct"); *United States v. Herrera-Zuniga*, 571 F.3d 568, 587 (6th Cir. 2009) (holding that the failure to specify whether a sentencing deviation constitutes a variance or departure "does not affect our ability to review the reasonableness of the deviation"). So again, Clemons cannot show he was prejudiced by the court's reliance on a national average in varying his sentence upwards because the court would have justified the same sentence as a departure.

*Substantive Reasonableness*. Clemons lodges just one argument in challenging the substantive reasonableness of his sentence—that the district court erred in placing "an unreasonable amount of weight" on the national sentencing average for a firearms offense when determining the length of his sentence. But the record does not support Clemons' contention.

Near the end of the district court's sentencing hearing, the court explained that it was varying Clemons' sentence upwards based on the "[§] 3553(a) factors *and also* the average sentence for a defendant such as Mr. Clemons." Thus, the court's summation of its reasons for varying Clemons' sentence upwards indicates that the average sentence was simply one of many factors it considered. And that is borne out in the record of the hearing. Among other factors, the court discussed Clemons' criminal history, which it called "abysmal," the need to provide for specific deterrence, protect the public, and reflect the seriousness of Clemons' offense. The court also noted that it did not think Clemons' had fully accepted responsibility for his crimes.

---

[9] We do not consider Clemons' additional argument that the district court erred by failing to provide him advanced notice that it was relying on a national average. Because Clemons did not make this argument in his opening brief, he waived it. *See Scottsdale Insurance Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008).

As mentioned, it thought Clemons was just as inclined to justify violating the law on the day of his sentencing as he had ever been. And it expressed its dissatisfaction that Clemons had not "worked legitimate jobs" in his life and had disobeyed the terms of his incarceration even after he was arrested by using a cellphone in prison. We decline to infer from the mere fact that the court imposed a sentence equivalent to the national average that it placed an unreasonable amount of weight on that factor. Accordingly, we hold that Clemons' sentence is substantively reasonable.

\* \* \*

For the foregoing reasons, we affirm the judgment of the district court.