NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0327n.06

No. 24-5829

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 03, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| v. | ) ) ) | |
| BRENDEN DAVID MARTIN, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: MOORE, GRIFFIN, and RITZ, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Over the course of two years, Brenden Martin "sextorted" a teenage girl to send him hundreds of explicit photos and videos, under threat of exposure and physical harm. After the girl's parents reported Martin to law enforcement, he was indicted on federal charges and pleaded guilty to producing child pornography. The district court sentenced Martin to twenty-nine years in prison, a one-year downward variance from the United States Sentencing Guidelines range. On appeal, Martin argues that his sentence is substantively unreasonable because the district court gave too much weight to national sentencing statistics and the severity of his offense and too little weight to his relative youth, mental health, and substance-abuse issues. Because the district court did not abuse its discretion in balancing these competing considerations at sentencing, we AFFIRM.

## I. BACKGROUND

In 2019, when Martin was 20 years old, he posed as a 14-year-old boy named Jacob on social media and requested a compromising photo from a 13-year-old girl. R. 71 (Presentence Investigation Report ("PSR") ¶ 7) (Page ID #209). After the girl shared a photo, Martin threatened to distribute it on social media unless she continued sending sexually explicit content. *Id.* So began a two-year-long ordeal, during which Martin coerced the girl to send him money and hundreds of explicit photos and videos, including images of herself engaged in self-harm. *Id.* ¶¶ 8– 14 (Page ID #209–10). He threatened to kidnap and rape her, kill her family, or expose the images to her parents if she did not comply. *Id.* ¶ 8 (Page ID #209–10). In the end, that's exactly what he did. When the girl finally refused to send any more pictures, Martin shared the explicit images with her parents. *Id.* ¶¶ 9–10 (Page ID #210). The parents of the teenage girl reported this to law enforcement in December 2021. *Id.* ¶ 7 (Page ID #209).

Martin was indicted for and pleaded guilty to producing child pornography pursuant to 18 U.S.C. § 2251(a). *See* R. 3 (Indictment at 1) (Page ID #3); R. 48 (Criminal Minutes – Re-Arraignment & Plea) (Page ID #127). After entering his guilty plea, his attorney moved for a pre-sentencing psychological evaluation pursuant to 18 U.S.C. § 3552(c). *See* R. 79 (Mot. Hr'g Tr. at 3–4) (Page ID #249–50). His attorney explained that Martin has been hospitalized for mental health issues and that he has a history of drug abuse and a serious head injury. *Id.* The magistrate judge granted the motion and ordered an evaluation "to assess Defendant's mental condition in light of his brain injury and mental health crises so as to inform sentencing considerations." R. 53 (Order at 1) (Page ID #139). Martin was evaluated by a psychologist at the Federal Correctional Institution in Butner, North Carolina. *See* R. 64 (Forensic Evaluation) (Page ID #159). The

2

evaluator diagnosed Martin with persistent depressive disorder, borderline personality disorder, and drug and alcohol abuse disorders. *Id.* at 11 (Page ID #169). The evaluator further concluded that it was "likely that most, if not all his offenses are related to one or more of his substance use and personality disorder diagnoses" and suggested that his risk of reoffending could be reduced with appropriate treatment. *Id.* at 13 (Page ID #171). It was recommended that Martin receive medication, therapy, and substance-abuse treatment in the community or in the Bureau of Prisons. *Id.* at 14 (Page ID #172).

At sentencing, the district court calculated Martin's total offense level at 43 and determined that his criminal history category was II. R. 82 (Sent'g Tr. at 10–11) (Page ID #298–99). These factors and the statutory maximum ultimately resulted in a guidelines range of 360 months' imprisonment. *Id.* at 11 (Page ID #299). Martin's counsel sought a downward variance of 120 months' imprisonment based on Martin's relative youth and the psychological evaluator's conclusion that Martin's crimes stemmed from his mental health and substance-abuse issues. *Id.* at 15–16 (Page ID #303–04). Martin's counsel argued that a 20-year sentence was sufficient to punish Martin and to ensure he received the treatment he needed. *Id.* at 16 (Page ID #304). The government sought the guideline 360-month sentence based on the severity of Martin's criminal conduct. *Id.* at 18 (Page ID #306). The government presented evidence that Martin engaged in similar "sextortion" tactics with other teenage girls. *Id.* at 20–22 (Page ID #308–10). The victim's mother also testified to the harmful impact that the crime had on her daughter's mental and physical wellbeing. *Id.* at 28–31 (Page ID #316–19).

The district court sentenced Martin to 348 months' imprisonment followed by a lifetime of supervised release. *Id.* at 41 (Page ID #329). In announcing the sentence, the district court

addressed the parties' arguments head on.  The court recognized Martin's age, the findings of the psychological report, and the likelihood that he could be rehabilitated with treatment.  *Id.* at 38 (Page ID #326).  The court then "balance[d] [those considerations] against the seriousness of the offense which . . . cannot be overstated."  *Id.* at 39 (Page ID #327).  The court concluded:  "[T]o the extent that there are mitigating circumstances, which include your youth, your history of mental and emotional health issues, and your long history of drug abuse, there are almost the same countervailing aggravating factors."  *Id.*  Accordingly, the court granted only a one-year downward variance, which put the sentence roughly "in line with the average sentence" for offenders with the same offense level and criminal history score, according to national sentencing statistics.  *Id.*  Martin timely appealed the substantive reasonableness of his sentence.

## II.  STANDARD OF REVIEW

We review claims of substantive unreasonableness under the abuse-of-discretion standard. *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020).  A sentence is substantively reasonable if "the length of a sentence conforms with the sentencing goals set forth in 18 U.S.C. § 3553(a)."  *Id.*  On review, we ask whether the district court "'placed too much weight on some of the § 3553(a) factors and too little on others' in reaching its sentencing decision."  *Id.* at 753–54 (quoting *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019)).  "If the court failed to give 'reasonable weight to each relevant factor,' the sentence that results is substantively unreasonable."  *Id.* at 754 (quoting *United States v. Boucher*, 937 F.3d 702, 707 (6th Cir. 2019)).

We afford a high degree of deference to the district court's balancing of the § 3553(a) factors, as the assignment of weight to each factor is "a matter of reasoned discretion, not math." *Boucher*, 937 F.3d at 707 (quoting *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018)).

"[S]entencing courts [have] broad discretion to fashion individualized, fact-driven sentences without interference from appellate courts." *Id.* at 708. When a sentence falls within the guideline range, we give it a presumption of substantive reasonableness. *Id.* at 707.

### III. ANALYSIS

Because Martin's sentence fell below his properly calculated guideline range, it is presumptively substantively reasonable. Martin cannot overcome that presumption.

First, Martin argues that the district court relied too heavily on national statistics relating to the average sentence for offenders with the same offense level and criminal history category. He contends that statistics from the U.S. Sentencing Commission's Judicial Sentencing Information ("JSIN") platform were minimally relevant because the age and mitigating circumstances of those offenders within the statistical dataset are not included.

District judges must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" as part of their sentencing determination. 18 U.S.C. § 3553(a)(6). One way that a district court considers national disparities is by calculating the appropriate guideline range, which serves to ensure "national uniformity" in federal sentences. *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008). A district court may also consider national statistics published by the Sentencing Commission, and, despite limitations of such data, we have encouraged district courts to treat sentencing statistics as a "starting point." *United States v. Hymes*, 19 F.4th 928, 935 (6th Cir. 2021) (quoting *United States v. Stock*, 685 F.3d 621, 629 n.6 (6th Cir. 2012)); *see also Perez-Rodriguez*, 960 F.3d at 756. Accordingly, the district court was within its discretion to give some weight to these national statistics as part of the individualized sentencing. Although these statistics may not provide a

detailed picture of each individual who was sentenced, they do provide a snapshot of how judges nationally have sentenced individuals with comparably serious offenses and criminal histories.

We cannot say that the district court gave too much weight to those statistics. At sentencing, the district court recognized that JSIN offered "the best tool . . . we have to discern" unwarranted sentencing disparities and noted that, among 71 defendants with a similar offense level and criminal history category as Martin, the average sentence was 349 months, and the median sentence was 360 months. R. 82 (Sent'g Tr. at 37) (Page ID #325). But this factor did not drive the sentence. Rather, what drove the district court's sentence was the balance between the seriousness of the offense and Martin's age and psychological issues. *See id.* at 39 (Page ID #327). The district court "note[d]" that its sentence was "in line with the average sentence under the JSIN statistics," but considered those statistics as "just one data point." *Id.* The district court confirmed that it was the "aggravating factors" associated with the offense, not the statistics, which foreclosed a larger downward variance. *Id.* at 39–40 (Page ID #327–28). Hence, the district court did not abuse its discretion in the weight it afforded to national sentencing statistics.

Second, Martin argues that the district court overvalued the nature and circumstances of the offense and the need to protect the public, while undervaluing his personal history and characteristics. *See* 18 U.S.C. § 3553(a)(1)–(2). Specifically, he contends that the district court did not give adequate weight to the report of the forensic psychologist, who attributed his conduct to mental illness and substance abuse and gave a relatively favorable prognosis for treatment.

The district court has broad discretion to balance the § 3553(a) factors. *Boucher*, 937 F.3d at 707. That discretion was not abused here. Without question, there was meaningful evidence in the record of Martin's youth, serious mental-health and substance-abuse diagnoses, and his

potential for rehabilitation. R. 64 (Forensic Evaluation at 11, 13) (Page ID #169, 171). But there was also significant evidence bearing on the severity of Martin's crimes. The record indicated that Martin had "sextorted" a teenage girl for two years, forcing her to send him money and humiliating photos, under threat of exposure and physical harm. R. 71 (PSR ¶¶ 8–14) (Page ID #209–10). According to testimony from the girl's mother, this protracted crime caused the girl to lose weight and hair, to become "secluded" and "angry," and to "los[e] herself" during those years. R. 82 (Sent'g Tr. at 29) (Page ID #317). Further undisputed evidence submitted at the sentencing hearing indicated that this girl was just one of Martin's victims. *Id.* at 20–22 (Page ID #308–10); R. 71 (PSR ¶ 16) (Page ID #211). From May to December 2021, Martin "threatened to rape no less than 13 individuals." R. 82 (Sent'g Tr. at 20) (Page ID #308). And a search of his phone revealed 112 images, including of other unknown potential victims, and screenshots documenting "sextortion or sextortion attempts of approximately 25 different females." R. 71 (PSR ¶ 16) (Page ID #211). We agree with the district court that "the seriousness of this offense cannot be overstated." R. 82 (Sent'g Tr. at 39) (Page ID #327). So, it was not unreasonable for the district court to weigh heavily the severity of the crime and to impose a 29-year, slightly below-guideline sentence.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.