RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0109p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TREVON BARCUS,

*Defendant-Appellant*.

No. 17-5646

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:16-cr-00113-1—Thomas W. Phillips, District Judge.

Argued: April 25, 2018

Decided and Filed: June 8, 2018

Before: COLE, Chief Judge; GUY and DONALD, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Debra A. Breneman, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Jennifer Niles Coffin, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Kelly A. Norris, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

COLE, Chief Judge. This matter presents a familiar question in our court: what special penalties are placed on sex offenders for violating the law? Trevon Barcus is a sex offender.

After cutting off his ankle bracelet and fleeing to Texas, Barcus pleaded guilty to failing to register as a sex offender as required by the Sex Offender Registration and Notification Act ("SORNA"). The district court sentenced him to 30 months of imprisonment and five years of supervised release with special sex offender conditions of supervision. Barcus now challenges his sentence on three fronts: (1) that the district court incorrectly classified him as a Tier III sex offender, (2) that the district court incorrectly interpreted the Sentencing Guidelines when it found that Tennessee "community supervision for life" qualified as a criminal justice sentence, and (3) that the special sex offender conditions of supervision are unreasonable.

Because we agree that Barcus was incorrectly classified as a Tier III sex offender, we vacate Barcus's sentence and remand to the district court for resentencing.

## I. BACKGROUND

At the age of 19, Trevon Barcus had sex with a 12-year-old girl. He pleaded guilty to attempted aggravated sexual battery in a Tennessee court. Because of this conviction, Barcus spent three years in prison, is subject to "community supervision for life" under Tennessee law, and is required to register as a sex offender under SORNA.

Soon after his release from prison, Barcus cut off his ankle monitoring bracelet and fled to Texas after "meeting some girls." He returned to Kentucky, but still failed to register as required and was ultimately arrested. After his arrest, Barcus pleaded guilty to failing to register as a sex offender under SORNA in violation of 18 U.S.C. § 2250(a).

The Presentence Investigation Report (PSR) classified Barcus as a Tier III sex offender. A Tier III classification corresponds to a base level of 16, a higher offense level than a Tier II or Tier I sex offender. The PSR also applied two additional criminal history points, determining that Barcus committed the failure-to-register offense while under a criminal justice sentence because he is subject to community supervision for life under Tennessee law. Because of Barcus's difficult past—drug use, sexual abuse, and mental health issues—the PSR recommended special conditions of supervised release. These conditions included mental health and drug treatment and other "special conditions of supervision for sex offenders." The sex

offender special conditions, in part, require Barcus to participate in a sex offender mental health treatment program, submit to a psychosexual assessment, and complete polygraph testing.

Barcus objected to—and the district court overruled—the additional criminal history points for being under Tennessee's "community supervision for life" and the three special sex offender supervised release conditions. He did not object to his classification as a Tier III sex offender. The district court then adopted the PSR calculations and sentenced Barcus to a within-guidelines sentence of 30 months in prison and imposed a five-year term of supervised release with the special sex offender conditions. Barcus appealed.

## II.  ANALYSIS

Both parties agree that Barcus is a sex offender who failed to register as necessary under SORNA. Nor is there any dispute that Barcus is subject to particular sentencing requirements for this violation because he is a sex offender. But the parties split over their degree and kind. This dispute raises three questions: (1) Did the district court correctly classify Barcus as a Tier III sex offender? (2) Did the district court correctly find that Barcus committed his registration offense while under a criminal justice sentence because he was under Tennessee "community supervision for life"? and (3) Were the mandated special sex offender conditions of supervised release reasonable?

### 1.  Barcus Is Not a Tier III Sex Offender

The district court incorrectly classified Barcus as a Tier III sex offender because his qualifying state conviction—Tennessee attempted aggravated sexual battery against a victim less than 13 years of age—is broader than the comparable offense under SORNA. The comparable federal offense requires Barcus to have acted with intent; the Tennessee offense does not.

Because Barcus failed to object to his classification below, we review for plain error. *United States v. Gardiner*, 463 F.3d 445, 460 (6th Cir. 2006). Incorrectly classifying a defendant as a Tier III sex offender is plain error. *United States v. Stock*, 685 F.3d 621, 629 (6th Cir. 2012); *see also Gardiner*, 463 F.3d at 461 (finding plain error where the district court erroneously applied a two-point enhancement that raised the defendant's adjusted offense level).

A defendant may be classified as a Tier III sex offender under SORNA if the defendant has a state-law conviction that is the same as or comparable to a specified federal offense. That is, a Tier III sex offender is a person convicted of a felony that criminalizes the same conduct as, or is "comparable" to, "aggravated sexual abuse or sexual abuse" as defined in § 2241 and § 2242 or "abusive sexual contact" against someone under 13 as defined in § 2244. 34 U.S.C. § 20911(4). To answer whether Tennessee aggravated sexual battery is a Tier III sex offense, we join other circuits in applying the categorical approach. *United States v. White*, 782 F.3d 1118, 1130–35 (10th Cir. 2015) (applying the categorical approach to SORNA tier classifications); *See also United States v. Berry*, 814 F.3d 192, 196 (4th Cir. 2016); *United States v. Morales*, 801 F.3d 1, 6 (1st Cir. 2015).

Both the categorical approach and SORNA call for the same analysis: to "compare" what the state law offense requires—not what an individual defendant did—to the Tier III requirements. If the elements of the Tennessee aggravated sexual battery statute are the same as the Tier III requirements, or are defined more narrowly, then the Tennessee conviction is classified as a Tier III offense. *Descamps v. United States*, 570 U.S. 254, 261 (2013). If the elements "sweep[] more broadly" than the Tier III offenses, then it is not. *Id.*

We start with the elements of the state offense. Tennessee aggravated sexual battery is "unlawful sexual contact with a victim by the defendant or the defendant by a victim" if, as relevant to this case, "[t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504. The Tennessee offense arguably defines multiple crimes, but "unlawful sexual contact" is an element of all of those variations, so we don't need to make this analysis even more complicated by applying the modified categorical approach.

"Sexual contact," as incorporated by reference into the statute, means "intentional touching . . . if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6).

Next, we compare the elements of the relevant Tennessee statute to the Tier III requirements. And for all this groundwork (no one ever said the categorical approach was simple), our focus is on just one element: intent.

The Tennessee statute does not require the defendant to act with specific intent; the federal statute does. For our purposes, a Tier III sex offender is someone who engaged in a "sexual act" or "sexual contact" if the "sexual contact had been a sexual act." *See* 34 U.S.C. § 20911(4) (incorporating 18 U.S.C. §§ 2241, 2242, 2244). As relevant here, a "sexual act" is "intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D). In the same vein, "sexual contact" "means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

The parties rightly home in on the phrase "reasonably construed" in the Tennessee definition of sexual contact. The Tennessee statute criminalizes "unlawful sexual contact," if that contact "can be *reasonably construed* as being for the purpose of sexual arousal or gratification." Tenn. Code Ann. § 39-13-501(6) (emphasis added). The "reasonably construed" element does not ask the jury to determine the defendant's actual intent. In fact, Tennessee courts have explained that the language of the statute does not impose a requirement that the sexual contact be with intent at all. *State v. Chisenhall*, No. M2003-956-CAA, 2004 WL 1217118, at *3 (Tenn. Crim. App. June 3, 2004). "The statute merely requires touching that can be '*reasonably construed* as being for'" arousal or gratification. *Id.* (citation omitted).

The Tennessee statute asks the jury to make an objective, rather than subjective, inquiry. A Tennessee jury is asked whether the defendant's conduct could be "reasonably construed" in a certain way; it is not asked whether the defendant in fact had the purpose of sexual gratification. *Smith v. Parker*, No. 10-1158, 2013 WL 5409783, at *10 (W.D. Tenn. Sept. 25, 2013) (noting that the Tennessee aggravated sexual battery statute "only requires an intentional touching that can be *reasonably construed*" as being for sexual arousal or gratification).

Tier III, on the other hand, requires actual intent, not a "reasonable" inference as to the defendant's motives. The federal statute requires specific intent and "describes the state of mind that the *defendant* must have had." *United States v. Shafer*, 573 F.3d 267, 277 (6th Cir. 2009) (quoting H.R. Rep. No. 99594, at 13 (1986)). Under the federal statute, a jury must determine

that the defendant's subjective intent was "to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D),(3). It does not ask that the jury make an objective inquiry into whether the defendant's conduct might be "reasonably construed" as for sexual gratification.

The government disagrees. In its view, this reading of the Tennessee statute "imagin[es] unlikely crimes," and there is no "realistic probability" that Tennessee has ever applied the statute in this way. (Appellant Br. 16 (citing *United States v. Verwiebe*, 874 F.3d 258, 260–61 (6th Cir. 2017).) But this application is not imaginary. Every time Tennessee applies the aggravated sexual battery statute, it applies it in exactly this way. Tennessee courts have consistently emphasized that "there is no requirement that the sexual contact itself be for sexual arousal or gratification." *Harrison v. Parris*, No. 16-cv-565, 2016 WL 6600429, at *6 (M.D. Tenn. Nov. 8, 2016), *aff'd*, 2017 WL 6049366 (6th Cir. Dec. 4, 2017) (internal citations omitted); *State v. Walton*, M2014-1337-CCA, 2015 WL 2257130, at *3 (Tenn. Crim. App. May 12, 2015) (concluding that a jury could have found beyond a reasonable doubt that the defendant touched the victim's "intimate parts" and that touching "can be reasonably construed as being for the purpose of sexual arousal or gratification" (quoting § 39-13-501(6))).

The government also suggests that instead of applying the categorical approach wholesale, we should find a state statute which is "slightly broader" than the federal counterpart to still be "comparable" to the Tier III requirements. *United States v. Forster*, 549 F. App'x 757, 769 (10th Cir. 2013); *see also Morales*, 801 F.3d at 7–8 (stating that the "comparable to" language may provide the court with "some flexibility in examining the offenses"). But *Mathis* shuts the door on this argument, and the out-of-circuit authorities the government points to for support were all decided before *Mathis*. *Mathis v. United States*, 136 S. Ct. 2243 (2016). In *Mathis*, the Supreme Court told us to do the same thing under the ACCA that is called for by SORNA: to make a comparison. *Id.* at 2248. As *Mathis* put it, courts applying the categorical approach must "compare the elements of the [state] crime of conviction" to the generic offense. *Id.* at 2247. "[I]f the crime of conviction covers *any* more conduct than the generic offense," then under the categorical approach the crimes are not comparable. *Id.* at 2248 (emphasis

added). Here too, "if the crime of conviction" under Tennessee law "covers any more conduct" than the federal offense, the two crimes are not comparable under SORNA. *Id.*

In short, Tennessee aggravated sexual battery does not require that the sexual contact be for arousal or gratification. The federal statute does. The state statute thus sweeps more broadly than the Tier III requirements. Barcus's Tier III status subjected him to a higher adjusted offense level, a higher sentencing range, and thus, more time in prison. Because Tennessee aggravated sexual battery is not comparable to the Tier III requirements, the district court committed plain error when it erroneously classified Barcus as a Tier III sex offender. *United States v. Olano*, 507 U.S. 725, 734 (1993); *Stock*, 685 F.3d at 629; *Gardiner*, 463 F.3d at 461.

**2. The District Court Correctly Applied U.S.S.G. § 4A1.1(d)**

We review the district court's interpretation of the Guidelines de novo. *United States v. Schock*, 862 F.3d 563, 566–67 (6th Cir. 2017). Section 4A1.1 instructs a court to add two criminal history points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." U.S.S.G. § 4A1.1(d). A "criminal justice sentence" involves a "custodial or supervisory component, although active supervision is not required for this subsection to apply." U.S.S.G. § 4A1.1 cmt. n.4.

The district court added two points to Barcus's criminal history score under § 4A1.1(d) because, under Tennessee law, someone convicted of attempted aggravated sexual battery is subject to "community supervision for life" upon release from prison or parole. Tenn. Code Ann. § 39-13-524(a), (c). Because a Tennessee court imposed Barcus's community supervision sentence, we examine how that sentence is treated under Tennessee law. *See United States v. DeJournett*, 817 F.3d 479, 483–84 (6th Cir. 2016). And that law states a "person on community supervision shall be under the jurisdiction, supervision and control of the department of correction in the same manner as a person under parole supervision." Tenn. Code Ann. § 39-13-524(d)(1). By its own terms, "community supervision for life" has a "supervis[ory]" component that is "in the same manner as . . . parole." *Id.* As parole qualifies as a criminal justice sentence under § 4A1.1(d), so does "community supervision for life."

Barcus argues that a blanket application of § 41A.1(d) to all sex offenders subject to Tennessee's criminal supervision statute is inconsistent with the purpose of calculating criminal history under the Guidelines: preventing recidivism—and an individualized assessment of whether additional criminal history points would further that goal. But the district court did conduct this individualized assessment. It evaluated Barcus's criminal history—he is a sex offender subject to community supervision for life—and applied § 4A1.1(d). Even more, the Guidelines empower the sentencing court to depart from this calculation if "reliable information" indicates that the defendant's criminal history category "substantially under-represents" or "substantially over-represents" the seriousness of the defendant's criminal history or likelihood of recidivism. U.S.S.G. § 4A1.3. Here, the district court, after evaluating Barcus's criminal history and the implications of Tennessee's community supervision for life, was free to depart from the Guidelines. It didn't. The district court did not err in adding two criminal history points for committing the SORNA offense while under community supervision for life.

Barcus also argued—for the first time at oral argument—that deeming Tennessee community supervision for life a criminal justice sentence under § 4A1.1(d) conflicted with the introductory commentary to the criminal history Guidelines. And that this Guideline commentary controls. *Stinson v. United States*, 508 U.S. 36, 38 (1993). The introductory commentary states that the "specific factors" included in § 4A1.1 are "consistent with the extant empirical research assessing correlates of recidivism and patterns of career criminal behavior." U.S.S.G. ch. 4, pt. A, introductory cmt. Barcus may well be correct that the current empirical research shows that sex offenders are not uniquely likely to recidivize, but changing the Guidelines to correspond to new empirical data is in the hands of the Commission, not this court. *See id.*

At base, Barcus's argument is that this is an unjust result. By being a Tennessee sex offender, he is subject to a two-point criminal history increase no matter what. But the commentary classifies Tennessee "community supervision for life" as a criminal justice sentence. U.S.S.G. § 4A1.1 cmt. n.4. The district court did not erroneously add two points to Barcus's criminal history score.

### 3. The District Court Did Not Abuse Its Discretion By Imposing Special Conditions of Supervised Release

We review the district court's imposition of special conditions of supervised release for abuse of discretion. *United States v. Childress*, 874 F.3d 523, 526 (6th Cir. 2017). An abuse of discretion occurs when we have a "definite and firm conviction that the trial court committed a clear error of judgment" by relying on clearly erroneous findings of fact, using an erroneous legal standard, or improperly applying the law. *United States v. Carter*, 463 F.3d 526, 528 (6th Cir. 2006).

Special conditions of supervised release are reviewed "along two dimensions:" procedural and substantive. *Id*. Because Barcus does not challenge the procedural aspect of the special conditions, we focus only on the substantive aspect.

Under this substantive aspect, a sentencing court may impose special supervised release conditions only if it meets three requirements. First, the conditions must be "reasonably related to" several sentencing factors. 18 U.S.C. § 3583(d)(1). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]" 18 U.S.C. § 3553(a)(1), (a)(2)(B)-(D). Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary for" several sentencing purposes: "to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner." 18 U.S.C. § 3583(d)(2); 18 U.S.C. § 3553(a)(2)(B)-(D). Third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(d)(3). *See Carter*, 463 F.3d at 529; *Childress*, 874 F.3d at 526. A condition must satisfy all three requirements but it need not satisfy every single factor and purpose within the first two requirements. *Carter*, 463 F.3d at 529–30.

Barcus challenges three special conditions: that he undergo a psychosexual evaluation, participate in sex offender mental health treatment, and submit to polygraph testing. His challenge focuses on only the first and second requirements. Barcus argues that the special conditions are not "reasonably related" to either "the nature and circumstances of the offense" or "the history and characteristics of the defendant." And, because the district court also ordered Barcus to receive mental health treatment, that the conditions constitute "a greater deprivation of liberty than reasonably necessary" to achieve the purposes of deterrence, protection of the public, and rehabilitation of the defendant. Both arguments are unavailing.

The special sex offender conditions are reasonably related to "the nature and circumstances" of Barcus's SORNA violation and his personal "history and characteristics." First, the sex offender conditions are reasonably related to the "nature and circumstances of the offense:" failing to register under SORNA. *See* 18 U.S.C. § 2250. Failure to register is not a "sex offense" for setting the terms of supervised release. U.S.S.G. § 5D1.2 cmt. n.1. But this is not the end of the inquiry. We look at whether the conditions bear a "reasonable relationship" to the instant offense. *See Carter*, 463 F.3d at 530; *United States v. Scott*, 270 F.3d 632, 636 (8th Cir. 2001). In *Carter*, for example, we concluded that being a felon in possession of a firearm had "nothing to do with sex." 463 F.3d at 530. Here, the instant offense—failing to register as a sex offender—has everything to do with sex. It is Barcus's status as a sex offender that put him in this position. The special sex offender conditions are "reasonably related" to his failure to comply with SORNA.

These special conditions are also reasonably related to "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Specifically, Barcus argues that because he committed a "single sex offense"—statutory rape charged as attempted aggravated sexual battery—six years before his instant offense, his "history and characteristics" are not reasonably related to the supervised release conditions. We addressed a similar argument in *Childress*, 874 F.3d at 527. There, we upheld special sex offender supervised release conditions based on a Tennessee conviction for aggravated assault where the offense conduct was two sexual acts with the defendant's minor half-sister. *Id*. So too here. The parties do not dispute that Barcus was convicted of attempted aggravated sexual battery for having sex with a 12-year-old girl. While

this act occurred six years ago, this is not so far in the past as to make the special sex offender conditions unreasonable.  *See id.* (finding that the special supervised release conditions were reasonable when the defendant committed sexual acts against a minor fourteen years and five years before the special conditions were imposed).  Besides, during four of those six years Barcus was incarcerated for committing that sexual act.

And more, none of the cases Barcus relies on can bear the weight he heaves on them. Barcus mainly relies on *United States v. Brogdon* where we upheld special sex offender conditions based on the defendant's multiple prior convictions for indecent exposure.  503 F.3d 555, 565 (6th Cir. 2007).  Because the Court highlighted that *Brogdon* did not "merely involve a single sexual offense," Barcus argues that his single sexual offense should get him off the hook. *Id.*  Not so.  We have upheld special sex offender supervised release conditions on much less, including uncharged conduct that never resulted in conviction.  *See United States v. Perkins*, 207 F. App'x 559 (6th Cir. 2006).  In *Brogdon*, the sex offender conditions were imposed as part of a sentence wholly unrelated to sex: being a felon in possession of a firearm.  As Barcus recognizes, "context matters."  (Appellant Br. 33.)  And, here, the sex offender conditions were imposed because Barcus failed to register as a sex offender.

That said, "[a] sentencing court's consideration of a defendant's history and characteristics is not limited to prior criminal convictions."  *Childress*, 874 F.3d at 528.  Barcus sporadically attended sex offender treatment before absconding to Texas after "meeting some girls."  (R. 25, PSR at ¶11, 30, PageID 164, 166.)  Considering Barcus's previous failure to comply with mandated sex offender treatment, reimposing those conditions was reasonable.

And in a last Hail Mary, Barcus argues that because he is already required to undergo mental health treatment, additional sex-offender specific conditions, including a polygraph, constitute "a greater deprivation of liberty than is reasonably necessary."  The district court imposes special supervised release conditions "to provide the defendant with the needed . . . medical care or other correctional treatment in the *most effective manner*."  18 U.S.C. § 3553(a)(2)(D) (emphasis added).  Barcus does not show that the additional conditions reduce the efficacy of his mental health treatment or that his proposal is the "most effective."  The crux of his argument is that the additional conditions are repetitive.  But in light of Barcus's

admission that he needs mental health treatment, the district court did not make "a clear error of judgment" by imposing additional sex offender treatment. *Carter*, 463 F.3d at 528.

For these reasons, the district court did not abuse its discretion by requiring Barcus to undergo sex offender treatment with a psychosexual evaluation, mental health treatment, and polygraph testing.

### III. CONCLUSION

Because the district court plainly erred when it classified Barcus as a Tier III sex offender, we vacate Barcus's sentence and remand for resentencing consistent with this opinion.