NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0042n.06

Case No. 22-1880

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>DONALD EUGENE WAGNER,<br><br>    Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td><strong>FILED</strong><br>Jan 29, 2024<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN<br><br>O P I N I O N</td></tr>
</table>

Before: SILER, NALBANDIAN, and MATHIS, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Michigan State Police arrested Donald Wagner after he bought a home in Michigan but failed to register as a sex offender, violating 18 U.S.C. § 2250. On top of sentencing Wagner to 20 months in prison, the district judge imposed nine special conditions as part of Wagner's supervised release. Wagner believes imposing these conditions is procedurally and substantively unreasonable, so he appealed. We see no error, so we AFFIRM.

## I.

In 2006, Donald Wagner landed on the federal sex offender registry, *see* Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. § 16901 *et seq.*, when he pleaded guilty to indecent exposure and sexual assault of a child in Colorado. He failed to register as a sex offender in 2011, incurring two years of intensive supervision. So when Wagner bought a house in Bridgman, Michigan, SORNA required him to register in that jurisdiction. Wagner worked in

Michigan between 2019 and 2022. But rather than register in Bridgman, Wagner continued to register in Colorado, travelling back and forth between the two states at least three times, first in February 2021 then again in June and August 2021, each time registering as homeless and listing his address as an intersection in Colorado. Though he claimed he bought the Michigan house as an investment property, authorities discovered that Wagner purchased homeowner's insurance and listed the Michigan property as his primary residence. A subsequent search revealed that Wagner was fully living in the Bridgman home. Michigan State Police arrested Wagner in 2022 for failing to register in violation of 18 U.S.C. § 2250(a) and 34 U.S.C. § 20913.

Wagner's Presentence Report (PSR) calculated a guidelines range of 18 to 24 months in prison. The PSR also recommended nine special conditions, each followed by reasons for imposing the condition:

1. Wagner "must participate in a sex offender assessment and/or treatment, as approved by the probation officer, which may include physiological testing, such as polygraph, and/or ABEL Assessment" "to determine [his] risk for reoffending and current amenability for treatment," "guide and direct specific recommendations for [his] conditions and treatment for supervision," "provide information that will help to identify the optimal setting, the intensity of intervention, and the level of supervision," and "assess the potential danger posed by" Wagner.

2. Wagner's "residence and employment must be pre-approved by the probation officer" "to minimize third-party risks and ensure compliance with sex offender registration laws."

3. Wagner "must not have direct contact with any child" he knows "or reasonably should know to be under the age of 18, without the permission of the probation officer," and he "must report this contact to the probation officer within 24 hours" "to minimize third-party risks and reduce the probability of recidivism."

4. Wagner "must not possess or publicly display any materials that may be viewed as lures for children, including but not limited to children's games, toys, videos, or clothing without prior approval of the probation officer" "to minimize third-party risks and reduce the probability of recidivism."

5. Wagner "must consent to third-party disclosure to any employer or potential employer, concerning any computer-related restrictions or community risks related to" him "to

> minimize third-party risks and reduce the probability of recidivism . . . based on the nature and circumstances of the instant offense."

6. Wagner "must use only those computer(s) and/or computer related device(s) approved in advance by the probation officer" "to reduce the probability of recidivism and address third-party risks . . . based on the nature and circumstances of the instant offense" and "to ensure compliance with other Court-ordered conditions."

7. Wagner "must notify the probation officer" if he "establish[es] a romantic, sexual, or personal relationship with another individual, and then must inform the other party of [his] prior criminal history concerning sex offenses" "to minimize third-party risks and reduce the probability of recidivism."

8. Wagner "must participate in the Computer/Internet Monitoring Program and must comply with the rules of the program as directed by the U.S. Probation Office" "to reduce the probability of recidivism and address third-party risks . . . based on the nature and circumstances of the instant offense" and "to ensure compliance with other Court-ordered conditions."

9. Wagner "must submit [his] person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer" "to reduce the probability of recidivism . . . based on the nature and circumstances of the instant offense" and "to ensure compliance with other Court-ordered conditions."

R.44, PSR, pp.17–19, PageID 116–18.  Wagner objected to all nine conditions except condition two, arguing that "they do not relate to the offense of conviction."  *Id.* at p.23, PageID 122.  He also argued that "he has already served his sentence for his 'sex crime(s)' and completed probation/parole for those offenses approximately 11 years ago," so he "should not be punished again with these discretionary conditions."  *Id.*  Wagner also objected to the PSR classifying him as a Tier III offender, meaning that he committed a previous sex offense that is punishable by more than one year in prison and is comparable to, for example, abusive sexual contact.  34 U.S.C. § 20911(4).  (Wagner raised one other objection to the PSR not relevant here.)  He ultimately pleaded guilty without a plea agreement to the charge of failing to register.

At sentencing, Wagner again disputed the Tier III categorization.  The district court agreed that Tier II was more appropriate, which neither party challenges on appeal.  This moved Wagner's

guidelines range to 15 to 21 months. Wagner also objected to the PSR's recommended special conditions.

The district court explained that this case fell "outside of the heartland of failing to register cases," because a typical failure to register case is one where "the offender has just walked away from his requirement of reporting, not making any material misrepresentations to anyone." R.68, Sent. Tr., p.41, PageID 280. But here, the court was "troubled by the nature of the deceit registered by Mr. Wagner in telling Colorado that he was homeless and therefore not discernible by Colorado authorities as being anywhere other than apparently at an intersection somewhere in the state." *Id.* at p.42, PageID 281. That was a "significant aggravating factor," especially because Wagner had a prior conviction in Colorado for failing to register. *Id.* Although Wagner only tried to register once in Michigan, he drove thousands of miles to Colorado multiple times "only to lie" about his location. *Id.* So the court acknowledged Wagner's "objection to certain recommended special conditions of supervision" but found that these conditions were "reasonably related to the nature and circumstances of the offense, and the history and characteristics of the defendant, and . . . do not provide any more restriction on the defendant's activities other than is reasonably necessary." *Id.* at pp.44–45, PageID 283–84. The court clarified that it was "ordering" the special conditions for the reasons in the PSR. *Id.* at p.49, PageID 288.

Importantly, after explaining the sentence, the court asked Wagner's attorney if he had "any legal objection to the sentence imposed, other than those already on the record," to which the attorney responded to "preserve" his proper tier argument but noted nothing else. *Id.* at pp.47–48, PageID 286–87. The court then asked if Wagner was "satisfied" that the court "addressed all of your arguments on the record," to which counsel responded "Yes, your Honor." *Id.* at p.48,

PageID 287. So the court sentenced Wagner to 20 months in prison with five years of supervised release and imposed all recommended conditions.

Wagner timely appealed, arguing that his sentence is procedurally unreasonable because the sentencing court (1) failed to articulate the specific reasons for imposing the special sex offender conditions and (2) relied on incomplete or inaccurate information. He also asserts that (3) the special conditions make his sentence substantively unreasonable.

## II.

We review district court sentencing decisions "under a deferential abuse-of-discretion standard," *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 41 (2007)), looking for both procedural and substantive reasonableness, *United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015). A sentence can be procedurally unreasonable if, for example, the district court selects "a sentence based on clearly erroneous facts" or fails "to adequately explain the chosen sentence." *Gall*, 552 U.S. at 51. A sentence can be substantively unreasonable if it is "greater than necessary[] to comply with the purposes of § 3553(a)." *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022) (quoting *United States v. Young*, 847 F.3d 328, 371 (6th Cir. 2017)). But we afford a within-guidelines sentence a presumption of reasonableness. *United States v. Graham*, 622 F.3d 445, 464 (6th Cir. 2010). District courts have an "institutional advantage" over appellate courts in making sentencing determinations, *Koon v. United States*, 518 U.S. 81, 98 (1996), so we give "due deference" to the "district court's application of guidelines to the facts" before it, *United States v. Abdalla*, 972 F.3d 838, 850 (6th Cir. 2020) (internal quotation marks omitted).

If a party fails to raise a procedural reasonableness challenge, we apply the "more exacting" plain-error standard, which requires a showing of an (1) obvious or clear (2) error (3) affecting the

defendant's "substantial rights" that (4) seriously affects "the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Nunley*, 29 F.4th 824, 830, 833 (6th Cir. 2022) (internal quotation marks omitted). In contrast, substantive reasonableness challenges need not be raised below, so we review for abuse of discretion. *Id.* at 830.

## A.

Wagner first argues that his sentence is procedurally unreasonable because the sentencing court failed to articulate the specific reasons for imposing the special conditions. But he failed to make this argument below. Though he objected to the imposition of the special conditions before sentencing, his objection sounded in substance rather than procedure—i.e., he was objecting to the overall outcome of imposing the conditions, not to the court's explanation of them. *See* R.44, p.23, PageID 122 (arguing before sentencing that Wagner "should not be punished again with these discretionary conditions"); R.68, p.28, PageID 267 (asserting at sentencing that the special conditions "weren't really necessary" but saying nothing about inadequate explanation). Wagner's argument that the court failed to adequately explain the sentence must, of course, be raised at sentencing. So his pre-sentencing objection to the conditions, therefore, cannot preserve an inadequate explanation challenge. *United States v. Thomas-Mathews*, 81 F.4th 530, 540 (6th Cir. 2023) (finding inadequate explanation challenges waived when defendant objects only to "whether the district court arrived at the correct outcome"). Indeed, Wagner was given two chances to object to the district court's explanation and didn't. *See* R.68, pp.47–48, PageID 286–87 (first asking if there was any "legal objection to the sentence imposed," and, second, if Wagner was "satisfied" that the court "addressed all of your arguments on the record").

We have held under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), that when a sentencing judge asks "the parties whether they have any objections to the sentence," then the

6

"defendant generally forfeits the right to challenge on appeal any procedural errors to which he did not object at the time of sentencing," *United States v. Herrera-Zuniga*, 571 F.3d 568, 578 (6th Cir. 2009) (internal quotation marks omitted). This question aids all involved, giving the parties a final chance to raise any objections, the district court the opportunity to correct any error on the spot, and appellate courts the ability to distinguish which objections were preserved. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc). Parties undermine the point of asking in the first place if they remain silent when asked the *Bostic* question only to assert new challenges on appeal. To maintain consistency in our review and encourage parties to raise their objections before the sentencing court, we review these unpreserved challenges for plain error.

With this standard in mind, we turn to Wagner's inadequate explanation challenge. A sentencing court is required to "state in open court the reasons for its imposition of the particular sentence," 18 U.S.C. § 3553(c), including its reasons for "mandating special conditions of supervised release," *United States v. Childress*, 874 F.3d 523, 526 (6th Cir. 2017) (internal quotation marks omitted).

The district court below articulated multiple reasons for the special conditions. The court ordered the conditions for the reasons given in the PSR, R.68, p.49, PageID 288, which included (1) determining Wagner's "risk for reoffending and current amenability for treatment"; (2) getting "information that will help to identify the optimal setting, the intensity of intervention, and the level of supervision"; (3) assessing "the potential danger posed by" Wagner; (4) minimizing "third-party risks"; (5) ensuring "compliance with sex offender registration laws"; (6) reducing "the probability of recidivism"; and (7) ensuring "compliance with other Court-ordered conditions," R.44, pp.17–19, PageID 116–18. The court did not plainly err by adopting the PSR's reasons.

7

On top of this, the court offered additional reasons: These "conditions are reasonably related to the nature and circumstances of the offense, and the history and characteristics of the defendant" and "do not provide any more restriction on the defendant's activities other than is reasonably necessary." R.68, pp.44–45, PageID 283–84.

Wagner believes this was inadequate. Not so. He ignores the colloquy right before, during which the court expressed that Wagner's conduct fell "outside the heartland" of a typical failure to register case because of the "nature of [Wagner's] deceit," a "significant aggravating factor." *Id.* at pp.41–42, PageID 280–81. The court's conditions reasonably related to curbing that deceit.

The court relied on *United States v. Barcus*, 892 F.3d 228, 236 (6th Cir. 2018), which held that special sex offender conditions were "reasonably related to the nature and circumstances of the offense" of failing to register. Invoking *Barcus* signals the district court's understanding that although failing to register is not itself a sex offense, special sex offender conditions bear a reasonable relationship to Wagner's offense. As *Barcus* put it, the offense of "failing to register as a sex offender [] has everything to do with sex." *Id.* And, as the trial court recognized, the deceit behind Wagner's offense suggests that it was more likely that he would reoffend: Wagner registered as homeless in Colorado, "making it impossible to track him" there, R.68, p.34, PageID 273, and he never registered in Michigan, making it impossible to track him there too. Because Wagner's opportunities for committing another sex offense are much higher when he's off the radar, the special conditions thus help reduce the risk of recidivism and minimize risks to others. *See id.* at p.49, PageID 288; R.44, pp.17–19, PageID 116–18.

In sum, the court's explanation was adequate. It explained how the special conditions were "reasonably related to" and "involve[d] no greater deprivation of liberty than is reasonably necessary for" the factors and purposes in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(d)(1)–(2)

(stating the standard for when and how a court may impose special conditions). Indeed, the court's discussion of the "nature and circumstances of the offense" and the "history and characteristics of the defendant" echoes 18 U.S.C. § 3553(a)(1). So there was no error, let alone a plain one that would affect "the fairness, integrity, or public reputation of the judicial proceedings." *Nunley*, 29 F.4th at 833 (internal quotation marks omitted).[1]

**B.**

Wagner next argues that his sentence is procedurally unreasonable because the district court used incomplete or inaccurate information to impose the special conditions—i.e., the PSR's inaccurate omission of the fact that Wagner already completed sex offender treatment. A sentence can be procedurally unreasonable if a sentence is "based on clearly erroneous facts." *Gall*, 552 U.S. at 51. So Wagner insists: "Had the court known about the intense regimen of supervision, treatment, classes and testing that Mr. Wagner was involved with over a period of years, it might

---

[1] Wagner points to *Barcus* and *United States v. Carter*, 463 F.3d 526, 532 (6th Cir. 2006) to argue that "there is obviously a temporal component to the rational application of these special conditions." Appellant Br. at 21. But even accepting the implied argument that an attenuated temporal connection between the offense and special conditions renders a sentence procedurally unreasonable, it does not give rise to plain error here. *Barcus* found that an act that "occurred six years ago" was "not so far in the past as to make the special sex offender conditions unreasonable." 892 F.3d at 236. And *Carter* held that a seventeen-year gap is too long. 463 F.3d at 532. But here, Wagner committed a sex offense in 2006 that put him on SORNA and then failed to register in 2011. So his case falls between *Barcus* and *Carter*. Our "precedent for how old is too old is mixed," and "we have never established a per se rule marking the temporal bounds of a sentencing court's inquiry when mandating a special condition of supervised release." *United States v. Davis*, No. 22-5215, 2023 WL 2487338, at *5 (6th Cir. Mar. 14, 2023) (internal quotation marks omitted). "This lack of clear guidance precludes a finding of plain error." *Id.*; *see also United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (explaining that an "error is plain when, at a minimum, it is clear under current law" (internal quotation marks omitted)).

have made a difference in the decision to impose the special conditions for his failure to register under SORNA." Appellant Br. at 25.

Wagner again failed to raise this objection below, even when given the chance to object to the PSR. *See* R.41, Initial PSR (filed on July 13, 2022); R.42, Obj. to Initial PSR (filed on August 2, 2022 and not objecting to ostensible omission of information about prior sex offender treatment); *see also* Fed. R. Crim. P. 32(f)(1) ("Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information . . . contained in or omitted from the report."). Wagner also did not object to this alleged omission at the sentencing hearing. Wagner's counsel told the judge that Wagner should not have to "redo the sexual offender's treatment, programs, polygraphs, all of that stuff." R.68, p.28, PageID 267. But this didn't constitute an objection to the PSR's information. In fact, counsel admitted that "[l]egally, of course, the Court can impose these special conditions if it finds they are necessary." *Id.* So we review for plain error.[2]

The sentencing court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). "When a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant." *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007).

---

[2] We have suggested that if a criminal defendant does not raise an objection at all below—neither in the pre-sentencing proceedings nor at sentencing—that issue may be out entirely because not even plain error can save it. *See United States v. Umanzor-Pleytes*, 598 F. App'x 433, 434 (6th Cir. 2015) ("[I]t is not plain error to fail to address arguments that are not raised."). But because the government does not make this argument and instead argues for plain error, we need not address whether the issue was forfeited entirely.

Without an objection to the PSR or evidence raised in the hearing, nothing made the district court question the information. And Wagner cites no cases to the contrary.[3]

Even if we believed the court committed an error that was plain, Wagner must show that the error affected his substantial rights. *Nunley*, 29 F.4th at 830. An "error affects substantial rights" in the sentencing context when "it causes the defendant 'to receive a more severe sentence.'" *United States v. Oliver*, 397 F.3d 369, 379 (6th Cir. 2005) (quoting *United States v. Swanberg*, 370 F.3d 622, 629 (6th Cir. 2004)); *see also United States v. Olano*, 507 U.S. 725, 734 (1993) (holding that the "error must have been prejudicial: It must have affected the outcome of the district court proceedings").

Nowhere in the sentencing hearing did the district court say it was imposing the special conditions *because* Wagner had not completed sex offender treatment. As described above, the court gave multiple reasons for imposing the conditions, none of which relied on Wagner's treatment history or perceived lack thereof. And the district court reasonably concluded that any past treatment hadn't worked because Wagner had now twice failed to register—with this second time involving extraordinary deceit. So it is not clear that the district court would have imposed a different sentence had it known about Wagner's past treatment. No supposed plain error affected Wagner's substantial rights. The district court therefore did not err in relying on the information contained in the PSR.[4]

---

[3] Wagner cites *United States v. Zabel*, 35 F.4th 493, 504 (6th Cir. 2022), but quotes a line addressing substantive unreasonableness with no effect on his procedural reasonableness challenge for inaccurate information.

[4] Wagner also claims the PSR omitted information about his mental health which would have shown that, because "Wagner did not indicate that he needed any further mental health treatment, nor does he need such additional treatment," assigning special conditions "would be duplicative of the courses and counseling he has already received." Appellant Br. at 22–23. He fails to

## C.

Wagner last contests the special conditions as substantively unreasonable. Reviewing for abuse of discretion, *see Nunley*, 29 F.4th at 830, we see none here.

Special conditions must be "reasonably related to," and "involve[] no greater deprivation of liberty than is reasonably necessary for," the factors and purposes in 18 U.S.C. § 3553(a). 18 U.S.C. § 3583(d)(1)–(2). The conditions must also be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § 3583(d)(3). Special conditions "will be upheld on appeal" if they reasonably relate to probation's dual goals—rehabilitating the defendant and protecting the public. *United States v. Dotson*, 715 F.3d 576, 584 (6th Cir. 2013). So our substantive reasonableness inquiry turns on whether the sentence is "greater than necessary" to achieve these goals. *Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766 (2020).

As mentioned, the district court justified the special conditions because, among other reasons, they would help determine Wagner's "risk for reoffending and current amenability for treatment," reduce "the probability of recidivism," and minimize "third-party risks." R.44, pp.17–19, PageID 116–18. Because of Wagner's demonstrated deception, moreover, he warranted further treatment and monitoring. And the district court explained that it believed the conditions "do not provide any more restriction on the defendant's activities other than is reasonably necessary." R.68, p.45, PageID 284. The PSR recommended these conditions—and the district court adopted them—precisely because they would serve the dual goals of Wagner's rehabilitation and protecting the public and were not greater than necessary to achieve those goals.

---

develop this argument in the section of his brief dedicated to inaccurate information. But, in any event, this argument fails for the same reasons given above.

What's more, as explained in *Barcus*, we have upheld imposing special conditions when the offense is not itself a sex offense but is instead a failure to register. *See* 892 F.3d at 236. We have even upheld imposing sex offender treatment for a felon-in-possession conviction when the criminal defendant had a history of sexual misconduct. *United States v. Brogdon*, 503 F.3d 555, 563–66 (6th Cir. 2007). Consider Wagner's history and characteristics. His record of sex offenses dates back to 1993. And recall that Wagner pleaded guilty to indecent exposure and sexual assault of a nine-year-old girl in 2006. Then in 2011, Wagner failed to register in Colorado. And Wagner was charged with another sex offense in 2018. So special conditions for failing to register after a history of past sex offenses are understandably "reasonably related" to his failure to comply with SORNA. *Barcus*, 892 F.3d at 236. Nothing in statute or caselaw leads us to conclude that the imposition of sex-offender-related special conditions on a repeat offender is an abuse of discretion.

**III.**

For the above reasons, we AFFIRM.