NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0082n.06

No. 23-5321

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| Plaintiff-Appellee, | ) | Feb 26, 2024 |
|  | ) | KELLY L. STEPHENS, Clerk |

UNITED STATES OF AMERICA,                )
    Plaintiff-Appellee,                      )       ON APPEAL FROM THE
                                         )       UNITED STATES DISTRICT
v.                                       )       COURT FOR THE EASTERN
                                         )       DISTRICT OF TENNESSEE
ARMANDO MEJIA-ALMAZAN,                    )
    Defendant-Appellant.                     )                 OPINION
                                         )
                                         )

BEFORE: BATCHELDER, MOORE, and CLAY, Circuit Judges.

**CLAY, Circuit Judge**. Defendant Armando Mejia-Almazan pleaded guilty to one count of conspiring to distribute at least 500 grams of a substance containing methamphetamine and at least 50 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). On appeal, Mejia-Almazan challenges the substantive reasonableness of the judgment of the district court in sentencing him to 292 months of imprisonment, which was at the bottom of his advisory Guidelines range of 292 to 365 months. Because the district court did not abuse its discretion, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. The Instant Offense

Over the course of several years, Mejia-Almazan participated in a widespread conspiracy to distribute methamphetamine in the Eastern District of Tennessee. By communicating with a broker in Mexico, Mejia-Almazan served as a source of supply in the Atlanta area for various

large-scale methamphetamine transactions. Local distributors within Tennessee and other states would contact Mejia-Almazan to coordinate a meeting and buy methamphetamine, often purchasing multiple kilograms at one time. The Drug Enforcement Administration ("DEA") and various other law enforcement agencies began investigating this conspiracy in 2019.

On two separate occasions, a DEA Task Force Officer acted undercover to purchase one kilogram of methamphetamine from Mejia-Almazan. In addition, pursuant to various court-authorized wiretaps and other investigative techniques, some of Mejia-Almazan's co-conspirators were pulled over after buying drugs from him. In one instance, state troopers seized five kilograms of methamphetamine. During subsequent questioning, one co-conspirator admitted that she obtained the methamphetamine from Mejia-Almazan, and stated that she "had made four to five similar trips since October 2019." Change of Plea Hr'g, R. 382, Page ID #2818. After setting up a final controlled buy of one kilogram of methamphetamine in January 2021, a DEA Task Force Officer arrested Mejia-Almazan.

Mejia-Almazan ultimately pleaded guilty to one count of conspiring to distribute at least 500 grams of a substance containing methamphetamine and at least 50 grams of actual methamphetamine. After listing a variety of instances in which Mejia-Almazan conducted drug transactions, the presentence report held him responsible for a converted drug weight of 419,165.90 kilograms. *See* U.S.S.G. § 2D1.1 cmt. n.8(D) (converting one gram of actual methamphetamine base to 20 grams of converted drug weight). In accordance with U.S.S.G. § 2D1.1 and various specific offense increases, the presentence report calculated Mejia-Almazan's advisory Guidelines range as 292 to 365 months' imprisonment, based on a total offense level of 39 and criminal history category of II. Neither party objected to the calculations or findings of the presentence report.

### B. Sentencing

Prior to sentencing, Mejia-Almazan filed a motion for a downward variance, arguing that the Guidelines range was "too harsh under the facts and circumstances presented in this case." Def.'s Mot. for Variance, R. 372, Page ID #2574. The motion focused on the need to avoid unwarranted sentencing disparities, noting that the statistical data from the United States Sentencing Commission indicated that district courts, on average, impose a downward variance of approximately 60 to 70 months in similar cases. Additionally, Defendant stated that his co-conspirators received significantly lower sentences than 292 months, the bottom of his Guidelines range.

Mejia-Almazan appeared for sentencing on April 7, 2023. After hearing arguments from both sides, as well as a statement from Defendant, and carefully considering the sentencing factors delineated in 18 U.S.C. § 3553(a), the district court rejected Mejia-Almazan's motion for a downward variance. First, in explaining the seriousness of the instant offense, the district court noted Mejia-Almazan's "overwhelming amount of [drug] activity" and "direct connection to . . . the ultimate source of supply." Tr. Sent'g Hr'g, R. 383, Page ID #2847, 2848. The court then considered Mejia-Almazan's limited criminal history prior to this offense. Turning to Mejia-Almazan's history and characteristics, the district court noted that Defendant did not "offer[] very much to color what [the court] know[s] from the presentence report," but highlighted his modest life and relationship with his children. *Id.* The court further considered Mejia-Almazan's direct ties to a drug cartel and the corresponding need to protect the public from future criminal activity. Finally, the district court considered the potential for sentencing disparities, finding the Defendant's proffered statistics "helpful," but ultimately concluded that Mejia-Almazan's "direct

connections" to the cartel and role as the "source of supply" distinguished this case from the average case. *Id.* at Page ID #2850.

Based on the totality of these circumstances, the district court imposed a sentence of 292 months' imprisonment, the bottom of Mejia-Almazan's Guidelines range, followed by five years of supervised release. After preserving his objection to the denial of a downward variance, Mejia-Almazan filed this timely appeal.

## II. DISCUSSION

### A. Standard of Review

We review the district court's sentencing decisions under a deferential abuse of discretion standard. *See Gall v. United States*, 552 U.S. 38, 46 (2007). Under this standard, we will not disturb a district court's ruling unless it was "based on an error of law or a clearly erroneous finding of fact, or when the reviewing court is otherwise left with the definite and firm conviction that the district court committed a clear error of judgment." *United States v. Kumar*, 750 F.3d 563, 566 (6th Cir. 2014); *see also United States v. Mayberry*, 540 F.3d 506, 519 (6th Cir. 2008) (explaining the great deal of deference this Court affords to a district court's sentencing determinations).

A criminal sentence must be both procedurally and substantively reasonable. *United States v. Morgan*, 687 F.3d 688, 693 (6th Cir. 2012). On appeal, Mejia-Almazan effectively concedes that his sentence is procedurally reasonable, but he argues that the district court imposed a substantively unreasonable sentence that was "significantly higher than defendants with similar criminal records and offense conduct." Pet'r's Br., ECF No. 22, 12. For a sentence to be substantively reasonable, "it must be proportionate to the seriousness of the circumstances of the offense and offender, and 'sufficient, but not greater than necessary, to comply with the purposes' of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (quoting *United States*

*v. Smith*, 505 F.3d 463, 470 (6th Cir. 2007)). Although sentences within the Guidelines range are presumed to be reasonable, a sentence is nonetheless substantively unreasonable "if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Tristan-Madrigal*, 601 F.3d 629, 633 (6th Cir. 2010) (citation omitted); *see also Rita v. United States*, 551 U.S. 338, 347 (2007) ("[A] court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines.").

## B. Analysis

Mejia-Almazan argues that his sentence was substantively unreasonable because: (1) defendants in similar cases with similar base offense levels and criminal history scores have received below-Guidelines sentences according to Sentencing Commission statistics; and (2) the within-range sentence overemphasized Mejia-Almazan's role as the "source of the supply." Pet'r's Br., ECF No. 22, 12. However, in this case, the district judge offered an extensive explanation to support his within-Guidelines sentencing determination. Therefore, each of Mejia-Almazan's arguments fails for the reasons contained herein.

### 1. *The Avoidance of Unwarranted Sentence Disparities*

Mejia-Almazan's primary argument on appeal challenges the district court's "dismissal of the Sentencing Commission's sentencing data" as substantively unreasonable. Pet'r's Br., ECF No. 22, 11. Pursuant to 18 U.S.C. § 3553(a)(6), sentencing courts must consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). This factor considers national disparities between similarly-situated defendants. *See United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008).

Historically, we have held that § 3553(a)(6) is an "unconventional ground for challenging a *within-guidelines* sentence." *United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011). The purpose of the advisory Guidelines—which Mejia-Almazan agrees are correctly calculated in this case—is to decrease sentencing disparities and provide a benchmark from which the district court must operate. *Id.*; *see also United States v. Skibbe*, 850 F. App'x 970, 971 (6th Cir. 2021). Contrary to Defendant's arguments, within-Guidelines sentences often help reduce disparities, rather than create them. *See United States v. Bailey*, 27 F.4th 1210, 1215 (6th Cir. 2022); *cf. United States v. Barcus*, 892 F.3d 228, 235 (6th Cir. 2018) ("[C]hanging the Guidelines to correspond to new empirical data is in the hands of the Commission, not this court.").

Nonetheless, Mejia-Almazan correctly notes that a significant percentage of the relevant Sentencing Commission data related to U.S.S.G. § 2D1.1 indicates that district courts have granted downward variances. However, where the district court based its sentencing decision on several other factors delineated in 18 U.S.C. § 3553(a), it is not required to disregard the import of those factors in order to precisely adhere to the relevant national sentencing statistics. *See, e.g.*, *United States v. Hymes*, 19 F.4th 928, 936 (6th Cir. 2021) (expressly rejecting imposing a requirement of consulting Sentencing Commission data before imposing a sentence); *United States v. Smith*, No. 22-5559, 2023 WL 4703864, at *4 (6th Cir. July 24, 2023) (noting that the district court was not required to follow national trends and statistics because "the Guidelines, not statistical reports, are our barometer for promoting nationwide sentencing uniformity" (quoting *Hymes*, 19 F.4th at 936)). Indeed, "[a]n unwarranted disparity is . . . just one of the factors a court must consider when fashioning an appropriate sentence." *United States v. Trejo*, 729 F. App'x 396, 401 (6th Cir. 2018). Because § 3553(a)(6) is one factor among many, the district court did not abuse its discretion in weighing other factors in imposing its ultimate sentence. *See, e.g.*, *Skibbe*, 850 F. App'x at 971

(acknowledging that the majority of "average" methamphetamine-distribution sentences are below-Guidelines for offenders in criminal history category I, but nonetheless holding that defendant's specific circumstances warranted a within-Guidelines sentence); *United States v. Sanderson*, No. 21-5900, 2022 WL 1133114, at \*6 (6th Cir. Apr. 18, 2022) (affirming sentence in a case where the defendant argued that his sentence was high in light of Sentencing Commission data because "the district court may rely on other factors to impose a higher sentence").

Beyond the discretion afforded to the district court in balancing the sentencing factors, Mejia-Almazan's proffered statistics do not account for the individualized nature of these types of sentences. Where the court "decide[s] that the statistics lack[] sufficient detail and context to show that the defendants whose sentences were reflected by the statistics 'ha[d] been found guilty of similar conduct,'" the district court does not abuse its discretion. *Trejo*, 729 F. App'x at 401 (citing 18 U.S.C. § 3553(a)(6)). As explained by the district court during sentencing, the proffered data does not illuminate the differences among offenders within the same criminal history category. *See United States v. Cole*, No. 22-1163, 2023 WL 3001571, at \*5 (6th Cir. Apr. 19, 2023). After considering the potential for sentencing disparities, the district court determined that Mejia-Almazan's direct connections to the source of the drug supply meaningfully differentiated his case from those national statistics. Additionally, Mejia-Almazan's sizable quantity of drugs differentiates him from the national statistics. After all, the highest base offense level a defendant can obtain using the Guidelines' Drug Quantity Table is 38. *See* U.S.S.G. § 2D1.1(c). And a defendant receives this maximum base offense level of 38 if he is attributed with 90,000 kilograms or more of converted drug weight—Mejia-Almazan was attributed with nearly *five times* this

amount.[1]   In other words, a defendant could have a similar Guidelines calculation even if he engaged in merely one of Mejia-Almazan's ten known drug transactions, further underscoring the individualized nature of these offenses.

Finally, although the district court was not required to compare Mejia-Almazan's co-defendants' sentences, Defendant's direct connections and leadership position also differentiate him from his co-defendants.  *See Soper v. United States*, No. 22-5025/5074, 2023 WL 3967189, at *5 (6th Cir. June 13, 2023) ("The need to avoid sentencing disparities under § 3553(a)(6) 'requires only a national comparison, not a comparison of codefendants in the same case.'" (quotation omitted)).  Mejia-Almazan also neglects to mention that several of his co-conspirators had significantly different Guidelines ranges and/or recommendations from the government for a downward variance.  In light of these meaningful differences, the district court reasonably decided that a within-Guidelines sentence was more appropriate than imposing a downward variance.

2. *The Severity of the Crime*

In addition to his argument regarding unwarranted sentencing disparities, Mejia-Almazan briefly states that his sentence "resulted from an overemphasis on the source of the supply, thus constituting an abuse of discretion."  Pet'r's Br., ECF No. 22, 12.  To the extent that Mejia-

---

[1] During sentencing, the government represented that Mejia-Almazan's drug-trafficking organization sold more than 50 kilograms of methamphetamine throughout the relevant time period.  To place the quantity of these drug sales in context, 50 kilograms is approximately 110 pounds, which can equate to over 200,000 dosage units.  *See Memphis Seizes Methamphetamines Hidden in Individual Peanut Shells*, U.S. CUSTOMS & BORDER PROTECTION (July 9, 2021), https://www.cbp.gov/newsroom/local-media-release/memphis-seizes-methamphetamines-hidden-individual-peanut-shells (noting the average dose of meth is approximately 0.2 grams); RANDI MEHLING, METHAMPHETAMINE 41 (David J. Triggle ed., 2008) (noting the average dose of meth is approximately a quarter of a gram).

Almazan argues that the district court placed too much weight on the seriousness of the crime, this argument also fails.

To justify the sentence that it imposed, the district court highlighted the "remarkably serious" nature of the offense. Tr. Sent'g Hr'g, R. 383, Page ID #2848. Specifically, the district court noted that Mejia-Almazan maintained a "direct connection to [the] organization" providing the methamphetamine, serving as a source to others for the methamphetamine supply. *Id.* The court specified that it had "see[n] few or virtually no[] [meth cases] that have [the instant] sort of connection to the ultimate source of supply." *Id.* Further, the sheer quantity of methamphetamine that Mejia-Almazan moved and "how easily [the Defendant] moved it" also contributed to the court's conclusion that the nature of the offense was "concerning." *Id.* at Page ID #2847–48.

Contrary to Mejia-Almazan's arguments, the district court did not unduly focus on his connection to cartel leadership and his resulting role as the source of the supply of methamphetamine. Rather, it also emphasized that he was "near the top of the organizational structure in this case" and the enormous amount of drugs at issue. *Id.* at Page ID #2848. In addition, the district court fairly considered other sentencing factors, including Mejia-Almazan's limited criminal history, general and specific deterrence, and his personal history and characteristics. Therefore, to the extent Mejia-Almazan simply argues that the district court should have weighed this factor differently, his argument fails. *See United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008).

## III. CONCLUSION

While Mejia-Almazan undoubtedly faces a serious sentence, the sentence was not substantively unreasonable because the district court thoroughly assessed the appropriate sentencing factors. Based on the severity of the sheer quantity of methamphetamine involved in

the distribution conspiracy, Mejia-Almazan's leadership role in the conspiracy, and both general and specific deterrence considerations, the district court determined that a within-Guidelines sentence was appropriate. Given the deference that this Court affords the district court on its balancing of the 18 U.S.C. § 3553(a) factors, the district court did not abuse its sentencing discretion. For the reasons set forth above, we **AFFIRM** the judgment of the district court.